**Sophia B. HERSCHEL, Plaintiff,**

v.

**EASTERN AIRLINES, INC., Defendant.**

United States District Court
S. D. New York.
March 14, 1963.

Dora Eberlin, New York City, for plaintiff.

Bigham, Englar, Jones & Houston, New York City, for defendant; Robert F. Ewald, New York City, William R. Howard (of Gambrell, Harlon, Russell, Moye & Richardson), Altanta, Ga., of counsel.

LEVET, District Judge.

The multi-state activities of the defendant, a national airline carrier, pose the jurisdictional question of the location of its principal place of business. The plaintiff is a citizen of New York; the defendant, a Delaware corporation alleging its principal place of business in New York. Diversity hinges upon the location of the defendant's "principal place of business," 28 U.S.C. § 1332(c).

The choice is between New York and Florida; specifically between New York City and Miami. The defendant concedes that the day-to-day operations of the airline are controlled and concentrated in Miami. In Miami is located the operations department which controls the operating of the airline in all respects, such as pilot personnel, flight attendants, flight engineers, stewardesses, and the other duties involved in the actual mile-to-mile and hour-to-hour routine operating of the flights. (16) [1] All of the defendant's aircraft are considered by it to be home-based in Miami (33) and Eastern registers and pays a tax for each aircraft to the State of Florida. (33, 35) No such tax is paid to the State of New York. (33–34) Its principal overhaul and maintenance base is in Miami

---

1. All references are to the transcript of the hearing held February 8, 1963 unless otherwise noted.

and all major overhaul and repairs are performed in the State of Florida except line maintenance, which is performed, as needed, at its airports in various states. (6, 15) $190 million of its $222 million in assets is located in Miami (35) and its property in Miami occupies several square miles. (36) Eastern's New York office consists of four floors, approximately 40,000 square feet, at 10 Rockefeller Plaza. (41) Eastern's communications facilities, engineering department, maintenance engineering (16) are located in Miami. Its crew and ship routing department, flight crew planning are in Miami (18, 20); all pilot training is performed in Miami.

Forty to forty-five per cent (6,000–7,000 out of 15,000–16,000) of Eastern's employees are based in Miami, which is over four times as many employees as are in New York (1,000 to 1,500) (21–22); all employment and personnel records are kept in Miami (17); all employees are hired by Miami, although local interviews are possible (17); all labor relations policies are finally determined in Miami, save for the exceptional interference by the Chairman of the Board in New York (42); Eastern's payroll is prepared in Miami. (17) Twelve officers of the corporation are located in Miami (Creighton Aff. 5–7), among whom are the Vice-Presidents of Operations, Labor Relations and Maintenance. Miami was described by the Executive Vice-President of Eastern as the "principal base or the main operating base." (43)

The General Executive Officers of Eastern are located in New York, at which the Chairman of the Board, the President and Chief Executive Officer and the Executive Vice-President have their offices. (40; Creighton Aff. 1–5); twenty-one other officers maintain their offices in New York, including six other Vice-Presidents, the Treasurer, the Secretary and eleven Assistant Vice-Presidents (ibid.); these officers spend from 10 to 90 per cent of their time in New York; the Chair-

man of the Board spends 25 to 35 per cent of his time in New York; the President, 65 to 75 per cent of his time (42); practically all of the time these officers do not spend in New York is spent in Miami (43); at New York are made all the usual day-to-day corporate decisions, including those concerned with policy (39); defendant's federal tax returns are filed in New York in accordance with Section 6091(b) (2) of the 1954 Internal Revenue Code, Title 26 U.S.C., which requires the return to be filed in the district wherein is located the corporation's principal place of business (Deft. Exs. A & B; 27–31); the Board of Directors meets regularly in New York. (Creighton Aff. 9)

The annual stockholders' meeting is held in Delaware. (6) The members of the Board of Directors are located in Tennessee, North Carolina, Texas, Florida, New York, Illinois and Georgia.

The phrase "principal place of business" in 28 U.S.C. § 1332(c) has been the subject of varying court decisions. All the courts agree that the location of a corporation's principal place of business is a factual question to be determined on a case-by-case basis through review of the corporation's total activity. See, e. g., Kelly v. United States Steel Corp., 284 F.2d 850 (3 Cir., 1960); Gilardi v. Atchison, T. & S. F. Ry., 189 F.Supp. 82 (N.D.Ill.1960); Scot Typewriter Co. v. Underwood Corp., 170 F. Supp. 862 (S.D.N.Y.1959). What has separated the courts is the legal criterion which is to guide this factual determination. See generally Note, A Corporation's Principal Place of Business for Federal Diversity Jurisdiction, 38 N.Y.U. L.Rev. 147 (1963).

The cases have taken two distinct lines of reasoning in determining the corporation's principal place of business. In Scot Typewriter Co. v. Underwood Corp., 170 F.Supp. 862 (S.D.N.Y.1959) the court held that while the defendant's largest manufacturing operations were in Connecticut, New York was its princi-

pal place of business, for it was in New York where policy determinations, direction and control of corporate affairs were located. "Where a corporation is engaged in far-flung and varied activities which are carried on in different states, its principal place of business is the nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective." 170 F.Supp. at 865.

The third circuit in Kelly v. United States Steel Corp., 284 F.2d 850 (3 Cir., 1960) refused to follow the "nerve center" test in determining the principal place of business of the defendant, one of the largest American corporations. The court rejected New York, where financial and ultimate corporate decisions are made, and chose Pennsylvania, the place where major operations in the production of steel are carried on, where more employees and tangible property are located and where day-to-day operating decisions are made.

In adding subsection (c) to Section 1332 in 1958, Congress desired that the courts be guided by the judicial constructions of similar provisions, such as Section 2, sub. a(1) of the Bankruptcy Act, 11 U.S.C. § 11, sub. a(1). (S.Rep.No. 1830, 85th Cong. 2d Sess. (1958)). Rather than, with solonic wisdom, establishing the criterion, this simply perpetuated the problem. Compare Burdick v. Dillon, 144 F. 737 (1st Cir., 1906), appeal dismissed 205 U.S. 550, 27 S.Ct. 792, 51 L.Ed. 925 (1907) [principal office]; In re Hudson River Nav. Corp., 59 F.2d 971 (2 Cir., 1932) [principal office] with Continental Coal Corp. v. Roszelle Bros., 242 F. 243 (6 Cir., 1917) [place of operations].

■ Without attempting to choose between these two criteria, a review of Eastern's total corporate activity would seem to place its "center of gravity," its "nerve center," its "principal place of operations" in Miami. While no one single factor can be chosen as all-persuasive, several significant factors point to Miami. The day-to-day, hour-to-hour, mile-to-mile operation of the airline is centered there; almost half of Eastern's employees are in Miami; all personnel are finally hired by Miami; a good portion of the time which the chief corporate officers do not spend in New York is spent there, which in the case of the Chairman of the Board amounts to almost half his time.

In a closely analogous case, Clothier v. United Air Lines, Inc., 196 F.Supp. 435 (E.D.N.Y.1961), Judge Bruchhausen found that the principal place of business of TWA, a world-wide airline, was in Kansas City, Missouri. One of the persuasive factors was that TWA's Technical Services and Transportation Departments, which were located in Missouri, employed 75% of all corporate personnel and formed the hub of TWA's activities. These departments performed aircraft engineering, overhaul and maintenance; transportation including flight operations, flight training, dispatch, meterology, flight crew planning and terminal services. Notwithstanding that TWA's President and eight Vice-Presidents were located in New York, the "corporate life of TWA as a carrier depends upon those activities performed in Missouri" and thus the center of its corporate activity was there. See also Wood v. United Air Lines, Inc., 216 F.Supp. 340 (E.D.N.Y. January 24, 1963).

It must not be forgotten that the business of Eastern is the operation of aircraft; the flying of aircraft and passengers from one designation to another. The "totality of the circumstances" in this case concentrate that business in Miami, Florida. While the designation of a principal place of business for a national airline, whose activities cover a multitude of states, is necessarily somewhat artificial, the law requires such a choice. On the record before me, this choice falls on Miami.

**350**

Accordingly, the court has jurisdiction of the parties to this action and the defendant's motion to dismiss is denied. The foregoing shall constitute my Findings of Fact and Conclusions of Law. Fed.R.Civ.P. 52(a). The defendant's request for the certificate of an interlocutory appeal, 28 U.S.C. § 1292(b), is denied in view of the fact that this determination is primarily factual; that this case is already on the calendar and will shortly be tried and that the trial does not appear to be protracted.

So ordered.