(No. 40369.—■

MARY H. BUTLER, Admr., Appellant, *vs.* THE CHICAGO TRANSIT AUTHORITY, Appellee.

*Opinion filed November 30, 1967.*

BARBERA AND FRIEDLANDER, and PHILIP H. CORBOY, both of Chicago, (DOM J. RIZZA and A. J. HARDIMAN, of counsel,) for appellant.

GEORGE J. SCHALLER, O. R. HAMLINK, JEROME F. DIXON, and PAUL DENVIR, all of Chicago, for appellee.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

Plaintiff's intestate died on March 6, 1960 as a result of injuries incurred in a collision between an automobile and one of defendant's trains. Plaintiff, Mary Butler as administratrix of the estate of William Butler, deceased, brought suit in the circuit court of Cook County under the Wrongful Death Act against defendant Chicago Transit Authority. The jury returned a verdict for the plaintiff in the amount of $125,000. Plaintiff's motion to amend the *ad damnum* to $125,000 was denied and judgment was entered for the plaintiff for $30,000 in accordance with the limitation of the Wrongful Death Act, (Ill. Rev. Stat. 1965, chap. 70, par. 2,). Plaintiff has appealed directly to this court challenging the constitutionality of the limitation of recovery contained in the Act and defendant has cross-appealed.

We first consider the legal issue raised by the appeal. Plaintiff argues that the limitation of recovery effects an unreasonable and arbitrary classification of persons entitled to recover under the Act without promoting any purpose of the statute and therefore deprives plaintiff of rights under both the Federal and Illinois constitutions.

This is not the first attack upon limitations on recovery for wrongful death. However, this case casts the issue in a somewhat different form. The plaintiffs in *Hall* v. *Gillins,* 13 Ill.2d 26, sought to establish a common-law right of action for wrongful death unaffected by the statutory limitations of the Wrongful Death Act. The court, however, refused either to invalidate the Wrongful Death Act or judicially recognize a new remedy.

The plaintiff here seeks to distinguish *Hall* v. *Gillins* on the ground that the suit there was a common-law action rather than one under the Wrongful Death Act; however the thrust of the argument there was the same as plaintiffs here. As the court said: (13 Ill.2d at 29) "We are asked to hold that the remedy that the legislature has provided is invalid because it is inadequate, or alternatively to overturn the old common-law rule and establish a new common-law remedy.

"In our opinion the constitutional question is not formidable when it is considered in the context of the situation that existed when the statute was originally enacted. At that time no action whatsoever was permitted for a wrongful death. The legislature took away no right when it enacted the statute. It created both the right and the remedy, and we think that its power to limit the maximum recovery in the action that it created can not be questioned. The fact that most States place no limit upon the amount recoverable, or that the legislative limit may seem unduly low when contrasted with recoveries in other actions, does not affect the power of the legislature, or the validity of its action.

"The adequacy of the remedy that the legislature has provided, however, does have a bearing when we are asked, as a common-law court, to review the remedies available and to determine whether or not a new one should be recognized."

Subsequently, in *Li Petri* v. *Turner Construction Co.,* 36 Ill.2d 597, we recognized the cogency of the criticism of the limitation of recovery contained in the Wrongful Death Act. However we did not abandon the position taken in *Hall* v. *Gillins* that the Wrongful Death Act was a proper exercise of legislative power.

In rejecting the suggestion that we recognize a common-law right to recover for wrongful death, the court stated in *Hall* v. *Gillins,* 13 Ill.2d 26, 31-32:

"We come then to the final point of difference, the statutory limit upon the amount recoverable. It is here that the plaintiff's argument presses most strongly upon us, for in most of the States there is no arbitrary limit upon the amount recoverable in a wrongful death action, and it is common knowledge that larger damages are often recovered for injuries than are permitted under our statute when the same wrongful conduct of the defendant has resulted in death. On the other hand, the adequacy of the monetary limit has been a source of constant legislative concern, particularly in recent years. The original limitation of $5000 upon the amount of recovery was increased to $10,000 in 1903 (Laws of 1903, p. 217); to $15,000 in 1947 (Laws of 1947, p. 1094); to $20,000 in 1951 (Laws of 1951, p. 393); to $25,000 in 1955 (Laws of 1955, p. 2006) and to $30,000 in 1957. Laws of 1957, p. 1939.

"Under these circumstances we are of the opinion that the differences between the action sought to be maintained and the action that is available under the statute are not sufficiently significant to warrant us in recognizing a new remedy. The point of greatest concern has been the subject of frequent legislative attention. Further legislative action

appears likely, and the likelihood of legislative action has always militated against judicial change."

The legislative change we anticipated resulted in a recent enactment removing all limitations on future death actions but specifically retaining the prior limitations as to death occurring prior to the effective date of the Act. (H.B. 626, 1967 Laws, Ill. Leg. Ser. p. 2316.) We believe that in light of this legislation it would be improper to recognize a new right of action, and we are convinced that the prior legislative remedy was nondiscriminatory in that it treated all members of the same class equally. *Hansen* v. *Raleigh,* 391 Ill. 536.

We therefore adhere to the view expressed in *Hall* v. *Gillins* that the legislative power to limit the maximum recovery for a right of action they created cannot be questioned. The trial court was correct in limiting recovery to $30,000.

We must next consider the issues raised by the cross-appeal. The defendant contends that there was no evidence of negligence, that plaintiffs' intestate was contributorily negligent as a matter of law, and that the verdict was against the manifest weight of the evidence. Defendant also alleges error in the giving of an instruction, in prejudicial final argument, and in the denial of a request for a continuance.

The accident occurred in Chicago near the intersection of Menard and Lake Street where the defendant's elevated trains ran at ground level. An automobile allegedly driven by one Watchorn and in which plaintiff's intestate was riding was going north on Menard after having made a left turn while going east on Lake Street. Defendant's train was travelling west at 35 miles per hour and collided with the car on the northern set of two tracks. The only eyewitnesses were the motorman and gateman of the defendant. The gateman testified that he lowered the gates by means of levers from a shanty, that an automobile turned

left moving about 20 to 30 miles an hour and knocked the first gate up a little bit and went under it and hit the second gate. The right front of the train collided with the right rear of the automobile. The defendant's motorman testified that the gates were down when he first saw the car, and that he did not blow the horn on the train. The motorman also said he "actually saw the car go under the gates." Both eyewitnesses testified that there were lanterns on the gates but other negative evidence disputes this contention. There is ample evidence that there was no damage to the gate on the south but that the northern gate was damaged by the car. There is also evidence that a car could not pass under the gates when lowered.

From a careful examination of all the evidence including photographs we believe that the jury could reasonably have found that the gates were not lowered until after the car had entered the right-of-way and that defendant was guilty of negligence. Nor do we believe that the evidence shows that plaintiff's intestate was guilty of contributory negligence as a matter of law. The jury could have found from the evidence that he was a passenger in the car which was being driven in a normal manner prior to the accident. (See *Zank* v. *Chicago, Rock Island and Pacific R.R. Co.*, 17 Ill.2d 473.) Although there is evidence that the driver of the car had been drinking, we do not believe the evidence adduced was sufficient to remove the issue of contributory negligence from the jury. *Myers* v. *Krajesfka*, 8 Ill.2d 322; *Anderson* v. *Launer*, 13 Ill. App. 2d 530.

The jury not only returned a general verdict but answered two special interrogatories affirmatively which were consistent with the verdict. Upon the whole record we are convinced that the question of liability was for the jury and that their resolution of this question was not against the manifest weight of the evidence.

Defendant also argues that such prejudicial error intervened in the proceedings as to require a new trial. In the

original suit plaintiff also named Watchorn, the alleged driver, as a defendant. On the first day of trial, plaintiff's motion to dismiss Watchorn as a defendant was granted, and the defendant Chicago Transit Authority moved for an order directing plaintiff to admit that Watchorn, if present, would testify as to certain material facts, or in the alternative, for a continuance.

We do not believe the trial court erred in denying the motion. It is apparent from the record that defendant knew that neither plaintiff nor Watchorn's attorney were aware of Watchorn's whereabouts some time prior to trial, nor did defendant's affidavit show a reasonable prospect that Watchorn's testimony could be procured. It is also apparent from the colloquy between court and counsel that defendant made no sincere effort to locate Watchorn. The denial of a continuance did not constitute an abuse of discretion.

Defendant also insists that the final argument for plaintiff was improper and prejudicial. We have carefully examined the entire final argument of plaintiff's counsel and, while it at times bordered on the dramatic, we cannot find that it would be prejudicial to defendant.

Defendant contends that the trial court erred in giving the following instruction to the jury: "If you find there was negligence on that part of the driver of the vehicle *in which the deceased was riding as a passenger,* then the driver's negligence cannot be charged to the deceased. The care required of the deceased, in this case, is that which a reasonably careful person riding as a passenger would use under similar circumstances." (Emphasis supplied.) Defendant argues that this instruction (I.P.I. 72.03) should not have been given in this case because there is a dispute as to who was driving the vehicle, plaintiff's intestate or Watchhorn. From a careful examination of the record it appears that in defendant's original answer to the complaint, the defendant did not deny that Watchorn was the driver and that their amended answer merely denied that

the deceased was a passenger and neither admitted nor denied the fact that Watchorn was the driver. The evidence is clear that Watchorn was the owner of the motor vehicle and that immediately after the accident Watchorn was found in the front seat behind the wheel and the passenger door of the front seat was open and the deceased's body was found 120 feet down the westbound tracks west of the place of collision. There was absolutely no evidence in the record that anyone but Watchorn was driving. Under these circumstances, we do not believe that the giving of plaintiff's instruction was reversible error. *Dept. of Public Works and Buildings* v. *McBride,* 338 Ill. 347.

The judgment of the trial court is accordingly affirmed.

*Judgment affirmed.*