C. A. JACKSON, Plaintiff-Appellant, *v.* MILLER-DAVIS COMPANY, Defendant-Appellee and Third-Party Plaintiff-Appellant.—(CECO CORPORATION, Third-Party Defendant-Appellee.)

First District (1st Division)  No. 61456

Opinion filed November 30, 1976.

Horwitz, Anesi, Ozmon & Associates, Ltd., of Chicago, and Dario A. Garibaldi, of Flossmoor (Joseph F. Cerveny and Nat P. Ozmon, of counsel), for appellant.

Garretson & Santora and Jerome H. Torshen, Ltd., both of Chicago (Jerome H. Torshen, Maria A. Skirnick, and Edward G. Wierzbicki, of counsel), for appellee.

McKenna, Storer, Rowe, White & Haskell, of Chicago (Eugene J. Farbug, Robert S. Soderstrom, and Scott J. Richardson, of counsel), for third-party appellee.

Mr. JUSTICE BURKE delivered the opinion of the court:

On March 23, 1970, C. A. Jackson allegedly fell from a scaffold erected at a construction site on the premises of Purdue University located in Hammond, Indiana. On January 11, 1974, C. A. Jackson filed an amended complaint in two counts against the general contractor, Miller-Davis Company (hereinafter "Miller-Davis"). Count I of the amended complaint alleged that Miller-Davis was guilty of several negligent acts

and omissions. Plaintiff claimed in count I that Miller-Davis violated certain provisions of the Indiana Dangerous Occupations Act relative to the requirements for safety scaffolding. (Ind. Ann. Stat. §20—301 *et seq.* (Burns 1964).) Count II of the amended complaint alleged that Miller-Davis wilfully failed to safely place or operate a temporary scaffold in violation of section 1 of the Illinois Structural Work Act. (Ill. Rev. Stat. 1969, ch. 48, par. 60.) Plaintiff brought count II under section 9 of the Illinois Structural Work Act which provides a right of action to any party injured as a result of wilful noncompliance with the provisions of the Act. Ill. Rev. Stat. 1969, ch. 48, par. 69.

On January 21, 1974, Miller-Davis moved to dismiss count I of plaintiff's amended complaint on the ground that the substantive law of Illinois, rather than the law of Indiana, is applicable. Miller-Davis also moved that count II should be dismissed on the ground that the Illinois Structural Work Act does not apply to work performed outside the territorial boundaries of Illinois.

Miller-Davis filed a third-party complaint in two counts against plaintiff's employer, Ceco Corporation (hereinafter "Ceco"). Ceco entered into a subcontract with Miller-Davis to furnish and install steel pan concrete forms and centering for the construction project. Count I of the third-party complaint claimed contractual indemnity on the ground the Ceco agreed to hold Miller-Davis harmless for the personal injuries suffered by plaintiff. Count II of the third-party complaint claimed indemnity on the basis that Miller-Davis was passively negligent while Ceco was actively negligent.

Ceco moved to dismiss count II of Miller-Davis' third-party complaint on the ground that the substantive law of Indiana, rather than the law of Illinois, is applicable. It is undisputed that Indiana law does not allow an action for implied indemnity based upon the distinction between "active" and "passive" conduct.

After considering extensive oral and written arguments of counsel, the trial court entered an order on November 14, 1974, finding that the law of Indiana controlled the disposition of the issues. The trial court struck count II of plaintiff's amended complaint on the ground that the Illinois Structural Work Act has no extraterritorial effect. Count I of plaintiff's amended complaint, which is based on Indiana substantive law, was allowed to continue. The trial court also struck count II of Miller-Davis' third-party complaint on the ground that Indiana law did not recognize an action based on the distinction between active and passive negligence. However, count I of Miller-Davis' third-party complaint, which alleged contractual indemnity, was allowed to continue.

Both plaintiff, C. A. Jackson, and defendant, Miller-Davis, appeal portions of the trial court's order. Plaintiff contends that count II of his

amended complaint should be reinstated because the civil remedy provision of the Illinois Structural Work Act provides him a cause of action. Defendant contends: (1) the trial court erred in refusing to dismiss count I of plaintiff's amended complaint, and (2) the trial court erred in striking count II of the third-party complaint. Defendant argues that the substantive law of Illinois, rather than the law of Indiana, determines the rights and liabilities of the parties. In response to plaintiff's appeal, however, defendant contends that the Illinois Structural Work Act does not have extraterritorial effect. Third-party defendant Ceco maintains that the law of Indiana is applicable and that the trial court's order should be affirmed in its entirety.

Miller-Davis is incorporated under the laws of Michigan; it also conducts business in Illinois and Indiana. Miller-Davis acted as the general contractor in charge of the construction of a library building located at Purdue University in Hammond, Indiana. The record indicates that contract terms contained in a purchase order tendered by Miller-Davis were conditionally accepted by Ceco at its office in Cicero, Illinois. Sixteen additional terms to the contract, proposed by Ceco, were accepted by Miller-Davis at its office in Michigan City, Indiana. The place of contract performance was Indiana. The terms of the contract between Miller-Davis and Ceco provide that Ceco "observe all safety regulation of the State, the Owner, and the Miller-Davis Company;" that Ceco "comply with the provisions of local, state, and federal laws and all other laws and regulations of any agency or governmental unit;" and that Ceco would hold Miller-Davis harmless from loss in connection with injury due to any negligence on the part of Ceco.

In 1970, the Indiana Dangerous Occupations Act was in effect. The Indiana statute provided certain requirements for flooring, staging, and scaffolding at various heights under various conditions. In 1971, Indiana abolished its Dangerous Occupations Act and enabled administrative machinery to adopt and enforce current Federal occupational safety and health standards. The safety requirements relative to scaffolding embodied in the former Indiana Dangerous Occupations Act are similar in nature to the safety requirements in the Illinois Structural Work Act. However, the specific standards which regulate all the aspects of scaffold construction differ substantially in each State statute.

The plaintiff, C. A. Jackson, is a resident of Illinois. On March 23, 1970, plaintiff was a labor foreman in the employ of Ceco at the Hammond, Indiana construction site. The record includes an affidavit wherein the plaintiff stated that approximately 80% to 90% of his employment time with Ceco has been spent in Illinois since 1963. The record indicates that co-workers of plaintiff were Indiana residents.

We are asked to decide two questions: (1) whether the law of Illinois or

the law of Indiana governs the rights and liabilities of the parties, and (2) whether the plaintiff can maintain an action under the civil remedy provision of the Illinois Structural Work Act.

In *Ingersoll v. Klein*, 46 Ill. 2d 42, 262 N.E.2d 593, our supreme court adopted the "most significant contact" approach to choice-of-law questions in tort. In *Ingersoll*, the decedent drowned in an automobile accident when his car broke through ice on the Mississippi River allegedly within the territorial jurisdiction of the State of Iowa. The decedent's administratrix filed a complaint based on Iowa law. In determining which State law was applicable, the court found that Illinois had the most significant contact with the action. The decedent in *Ingersoll* was an Illinois resident; the estate was pending in Illinois; the plaintiff was an Illinois resident; and the defendants were Illinois residents. Since Iowa's only connection to the action was that by happenstance it was the "alleged situs" of the decedent's death, the court held that Illinois law was applicable. The court articulated its approach to a choice-of-law question pertaining to personal injury actions by stating:

> "In our opinion, the local law of the State where the injury occurred should determine the rights and liabilities of the parties, unless Illinois has a more significant relationship with the occurrence and with the parties, in which case, the law of Illinois should apply." *Ingersoll v. Klein*, 46 Ill. 2d 42, 45, 262 N.E.2d 593, 595.

The *Ingersoll* holding is consistent with the choice-of-law principles formulated by the American Law Institute in Restatement (Second) of Conflicts of Law (1971). In tort actions, the Restatement (Second) provides that certain contacts are to be evaluated according to their relative importance to the particular issue presented by the action. The contacts to consider include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." (Restatement (Second) of Conflict of Laws §145 (1971).) Further, the Restatement (Second) provides that contacts in a multistate tort action are to be evaluated in light of underlying policy factors important to the tort area, which include: needs of the interstate system, the relevant policies of the forum, the relevant policies of any other state which may have a dominant interest in the determination of the particular issue and the ease in the determination and application of the law to be applied. Restatement (Second) of Conflict of Laws §6 and §145, comment b (1971).

■■ A central issue raised by the pleadings in the case is whether defendant Miller-Davis failed to exercise due care in the placement or

construction of the scaffold from which plaintiff fell. Where the issue involves standards of conduct, the Restatement (Second) provides that the place of injury and the place of the conduct causing the injury (place of tort) are the contacts which play the most important role in determining which State has the most significant relationship with the action. It is usually appropriate to apply the law of the place of the tort in order to give effect to that jurisdiction's interest in regulating conduct within its territorial borders. (*Babcock v. Jackson* (1963), 12 N.Y.2d 473, 240 N.Y.S.2d 743.) Commentary found in various Restatement (Second) sections lend support to our analysis. Comment d under section 145 reads in part:

> "Experience and analysis have shown that certain issues that recur in tort cases are most significantly related to states with which they have particular connections or contacts. So, for example, a state has an obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occurred there. Thus, subject only to rare exceptions, the local law of the state where conduct and injury occurred will be applied to determine whether the actor satisfied minimum standards of acceptable conduct and whether the interest affected by the actor's conduct was entitled to legal protection (see §§146-147)."

Comment e under section 145 further elaborates:

> "When the injury occurred in a single, clearly ascertainable state and when the conduct which caused the injury also occurred there, that state will usually be the state of the applicable law with respect to most issues involving the tort. This is particularly likely to be so with respect to issues involving standards of conduct, since the state of conduct and injury will have a natural concern in the determination of such issues."

Comment e under section 146 provides:

> "The local law of the state where the personal injury occurred is most likely to be applied when the injured person has a settled relationship to that state, either because he is domiciled or resides there or because he does business there. When, however, the injured person is domiciled or resides or does business in the state where the conduct occurred, there is a greater likelihood that this state is to be the state of most significant relationship and therefore the state of the applicable law with respect to issues that would usually be determined by the local law of the state of injury. The same may be true when the injury occurred in the course of an activity or of a relationship which is centered in the state where the conduct occurred and when the injured person has no settled relationship to the state where the injury occurred."

■■ Indiana is the State which has the most significant relationship to the occurrence and to the parties. Plaintiff's injury occurred in Indiana; the conduct which allegedly caused plaintiff's injury occurred in Indiana; Miller-Davis conducted business as general contractor for the Hammond, Indiana construction site from its office in Michigan City, Indiana; and the center of the contractual relationship between Miller-Davis and Ceco was the Hammond, Indiana construction site. A reasonable interpretation of the terms contained in the contract between Miller-Davis and Ceco leads us to believe that both parties expected that the local laws of the place of performance were to be observed. Moreover, plaintiff's injury did not occur in Indiana by fortuity or by happenstance; plaintiff's injury occurred during his planned period of employment in Indiana.

■■ The purpose of the Indiana Dangerous Occupations Act was to fix a higher standard of care on the person in charge of constructing scaffolds. (*Wolfe v. Bethlehem Steel Corporation* (7th Cir. 1972), 460 F.2d 675.) Indiana has an interest in establishing safety standards necessary to insure the safe construction of scaffolding on construction sites within its territorial borders. Scaffolding at the Hammond, Indiana construction site should have been erected in accordance with the safety standards prescribed by the Indiana Dangerous Occupations Act in effect at the time. Therefore, Indiana law provides a precise standard of care which should have been followed by the persons in charge of constructing scaffolds at the Hammond, Indiana construction site in 1970. Under the facts in this case, it is Indiana law which determines the tortious character of the conduct in question, the existence of legal duties, and the availability of defenses. In light of the approach adopted by the *Ingersoll* decision and the Restatement (Second), we are compelled to give effect to Indiana's interests in this action. Indiana law must be applied to determine the rights and liabilities of all the parties. It follows that the trial court acted correctly in dismissing the second count of the third-party complaint of Miller-Davis against Ceco. See *Lewis v. Stran Steel Corp.*, 57 Ill. 2d 94, 311 N.E.2d 128; *Wartell v. Formusa*, 34 Ill. 2d 57, 213 N.E.2d 544; *Casey v Manson Construction & Engineering Co.* (1966), 247 Ore. 274, 428 P.2d 898.

The second issue before us is not a choice-of laws problem in the usual sense. Plaintiff contends that he can maintain an action under the civil remedy provision of the Illinois Structural Work Act. Plaintiff argues that Miller-Davis should have been bound to follow the safety regulations of the Illinois statute. Plaintiff utilizes the rule of statutory construction known as the doctrine of the "last antecedent clause" in supporting his interpretation of section 1 of the Illinois Structural Work Act, which provides:

"That all scaffolds, hoists, cranes, stays, ladders, supports, or

other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." Ill. Rev. Stat. 1969, ch. 48, par. 60.

Plaintiff argues that the phrase "in this State" modifies the phrase "any person, firm or corporation." Because Miller-Davis conducts business in Illinois, plaintiff reasons that scaffolding constructed by Miller-Davis on the Indiana site should conform to the safety requirements in the Illinois act. Plaintiff extends the argument by claiming that he has a cause of action under the act because Miller-Davis failed to comply with the Illinois safety regulations.

After a thorough examination of the sections of the Illinois Structural Work Act, we are convinced that the legislature did not intend that the act apply to work conducted beyond the territorial boundaries of Illinois. (See Restatement (Second) of Conflict of Laws §6(1), comment e (1971).) Our supreme court has liberally construed the act for the purpose of affording broad protection to working men. (*Halberstadt v. Harris Trust & Savings Bank*, 55 Ill. 2d 121, 302 N.E.2d 64.) However, the Illinois Structural Work Act cannot sensibly be construed to have extraterritorial application to injuries or work occurring outside Illinois. In general, statutory construction should interpret a statute with the view of giving it efficient operation and effect as a whole. Courts should avoid a strained interpretation which renders a statute meaningless or inoperative. *Pliakos v. Illinois Liquor Control Com.*, 11 Ill. 2d 456, 143 N.E.2d 47.

The legislature specifically indicated in various sections of the act that it applies only to persons and things within the jurisdiction of Illinois. Section 2 of the act, which provides for standards relative to the construction of supports for joists, reads:

"If in any house, building or structure in process of erection or construction *in this State* * * *." (Emphasis added.) Ill. Rev. Stat. 1969, ch. 48, par. 61.

Section 4 of the act indicates the types of devices which are regulated. Section 4 also provides the mechanism for inspection and notice:

"Whenever it shall come to the notice of the Director of Labor or the local authority in any city, town or village *in this State* charged with the duty of enforcing the building laws, that the scaffolding

\* \* \* used in the construction, alteration, repairing, removing, cleaning or painting of buildings, bridges or viaducts *within this State* \* \* \*." (Emphasis added.) Ill. Rev. Stat. 1969, ch. 48, par. 63.

Section 7 of the act, which provides for local enforcement of the act's provisions, reads in part:

" \* \* \* in all cities *in this State* where a local building commissioner is provided for by law, such officer shall be charged with the duty of enforcing the provisions of this act \* \* \*." (Emphasis added.) Ill. Rev. Stat. 1969, ch. 48, par. 66.

■■ Section 9 of the act grants enforcement powers to the Director of Labor through the State's Attorney. Section 9 also provides for fines and imprisonment as punishment for violation of any of the act's provisions. The act is therefore penal as well as civil in character. *Rovekamp v. Central Construction Co.*, 45 Ill. App. 2d 441, 195 N.E.2d 756.

■■ The legislative intent and purpose of the Illinois Structural Work Act is to provide protection to all workmen in and about construction sites in Illinois regardless of the residency of the parties responsible for the erection of the devices regulated by the act. To hold that the act has extraterritorial application would render the act's enforcement provisions inoperative. Further, it would be unreasonable to hold that Illinois corporations must comply with the safety regulations of the act at construction sites outside Illinois where entirely different standards may be enforced by other state governments. Such an interpretation would strain interstate commerce and interstate relations. (See *Charter Finance Co. v. Henderson*, 60 Ill. 2d 323, 326 N.E.2d 372.) Moreover, the civil remedy provision in section 9 of the act promotes the enforcement of the act's provisions. The civil remedy provision is dependent upon wilful violation of standards imposed by other sections of the act. We cannot hold that the civil remedy provision provides a separate cause of action apart from the application of the act as a whole. See *Graham v. U. S. Grant Post No. 2665*, 43 Ill. 2d 1, 248 N.E.2d 657.

For these reasons the judgment of the trial court is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and SIMON, J., concur.