In re AIR CRASH DISASTER NEAR CHICAGO, ILLINOIS, ON MAY 25, 1979.

MDL No. 391.

United States District Court, N. D. Illinois, E. D.

May 29, 1980.

Kevin M. Forde, Ltd., Chicago, Ill., for plaintiff.

Thomas Allen, Wildman, Harrold, Allen & Dixon, Chicago, Ill., Norman J. Barry, Rothschild, Barry & Myers, Chicago, Ill., for defendant.

Before ROBSON and WILL, Senior District Judges.

## MEMORANDUM OPINION

This cause is before the Court on the Motion of defendants American Airlines, Inc. and McDonnell Douglas Corporation to strike all pending claims for punitive damages for wrongful death by plaintiffs in these consolidated actions.[1] The present motion concerns only punitive damages incident to wrongful death claims, and does not concern punitive damages ancillary to claims for property damage, personal injury or other claims. For the reasons stated, the motion is granted in part and denied in part.

The relevant facts for the purposes of this motion are primarily undisputed. The crash and consequent deaths occurred in Illinois. Plaintiffs and their decedents were and are residents of California, Connecticut, Hawaii, Illinois, Indiana, Massachusetts, Michigan, New Jersey, New York, Puerto Rico, and Vermont, as well as Japan, the Netherlands and Saudi Arabia. At the time of the crash, American Airlines, Inc. [hereinafter referred to as American], a Delaware corporation, had its principal place of business in New York. In August 1979, American moved its principal place of business to Texas. At the time of the crash, American's operations base was in Texas, and its maintenance department was headquartered in Oklahoma. Defendant McDonnell Douglas Corporation [hereinafter referred to as MDC], a Maryland corporation, had its principal place of business in Missouri. The DC–10 aircraft was designed and built by MDC in California.

Defendant MDC argues that this Court should apply the law of Illinois, the place of the injury, to all actions, and that Illinois law does not allow punitive damages. Defendant American argues that the law of Illinois should be applied to actions originally filed in Illinois and Michigan, and that of New York should be applied to actions originally filed in New York and California. American contends that neither Illinois nor New York permits punitive damages in a wrongful death action.

The plaintiffs take various positions. Some contend that the conflict of law rules of all the forum states require us to apply the law of defendants' principal place of business or the law of the state where the alleged wrongful conduct occurred. Other plaintiffs, notably those from Michigan and Hawaii, assert that the conflict of law rules of those forums require the Court to apply the law of the plaintiff's domicile. All plaintiffs contend that under the applicable state law, punitive damages are recoverable in a wrongful death action. Additionally, plaintiffs contend that to deny punitive damages in wrongful death actions, while permitting them in personal injury actions, violates the equal protection clauses of the United States Constitution, and the Illinois, California and Michigan state constitutions.

## CONFLICTS OF LAWS

Since the jurisdiction of this Court is based on diversity of citizenship, we must apply the choice of law rules of the state where the actions were originally filed. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Therefore, we will consider the choice of law rules of Illinois for actions originally filed in Illinois, and the choice of law rules of California, Michigan, New York, Puerto Rico and Hawaii for actions originally filed in those jurisdictions. We have already decided that the liability in these actions is to be determined under Illinois law, and compensatory damages probably are to be governed by

---

1. Some plaintiffs contend that the motion is more properly considered as a motion to dismiss for failure to state a claim under F.R. Civ.P. 12(b)(6) since motions to strike under Rule 12(f) must be filed within certain time limits. However, F.R.Civ.P. 12(f) provides that a court may consider a motion to strike at any time.

the law of the domicile of the plaintiffs or their decedents. *In Re Air Crash Disaster Near Chicago, Illinois,* 480 F.Supp. 1280 (N.D.Ill.1979). However, the conflict of law rules require a different result as to punitive damages.

### ACTIONS FILED IN ILLINOIS

Illinois courts apply the "most significant relationship" test of the Restatement (Second) of Conflict of Laws to determine the applicable law in a tort action. *Ingersoll v. Klein,* 46 Ill.2d 42, 262 N.E.2d 593 (1970). Under this test, four "contacts" generally are considered most important in determining which law applies: (1) the place of the injury; (2) the place where the conduct causing injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, of the parties is centered. *Ingersoll, supra,* at 47–48. Illinois courts consider the purpose of the tort rule involved when determining the relative importance of the various contacts to the issue under consideration.

The first and second factors are considered significant where the issue concerns the defendant's adherence to standards of conduct. The state in which the conduct occurred and the state of injury have the greatest interest in regulating behavior within their jurisdictions. In the present case, the state in which the wrongful conduct occurred and the state of injury are different. The conduct which allegedly caused the injury, American's improper maintenance of its airplane and MDC's faulty design and construction of the plane, presumably occurred in Oklahoma and California, respectively, although this is not entirely clear. The accident, however, occurred in Illinois. *Leschkies v. Playboy Club of Lake Geneva, Inc.,* 465 F.Supp. 80 (N.D.Ill.1979); *Kramer v. McDonald Systems, Inc.,* 61 Ill.App.3d 164, 19 Ill.Dec. 21, 378 N.E.2d 522 (1976); *Jackson v. Miller–Davis,* 44 Ill.App.3d 611, 3 Ill.Dec. 161, 358 N.E.2d 328 (1st Dist. 1976); *See* Restatement, § 146, comments d and e.

Where, as here, the conduct causing injury occurs in a state other than that in which the injury occurred, the importance of the place where the conduct occurred increases. The purpose of punitive damages is to punish and deter wrongdoing. *Sibley v. KLM–Royal Dutch Airlines,* 454 F.Supp. 425 (S.D.N.Y.1978); *Jackson v. Koninklijke Luchtvaart Maatschappij N.V.,* 459 F.Supp. 953 (S.D.N.Y.1978). The state in which the wrongdoing actually occurred has a greater interest than the state where the effect of the wrongdoing fortuitously manifested itself. *See* Restatement, § 146, comment e.

The third factor, the defendant's principal place of business, is also important where the issue is what state's law governs the availability of punitive damages. A state's purpose in granting punitive damages is to insure residents' compliance with standards of conduct; a state's purpose in denying punitive damages is to limit the liability of its domiciliaries in tort actions. *Forty–Eight Insulations v. Johns–Manville Products,* 472 F.Supp. 385 (N.D.Ill.1979); *Pancotto v. Sociedade de Safaris de Mocambique, S.A.R.I.,* 422 F.Supp. 405 (N.D.Ill. 1976). Both purposes would be served by applying the law of the state of the defendant's domicile.

In *Sibley, supra,* and *Jackson, supra,* the court held that the availability of punitive damages in cases arising from the crash at Tenerife in the Canary Islands of a Pan American 747 and a KLM 747 was governed either by the law of the place of conduct and injury (Spain), or by the law of the principal place of business of KLM (Netherlands), neither of which allowed punitive damages. The court recognized that punitive damages are primarily the concern of the jurisdiction where the conduct occurred or the defendant's business was located. Denial of punitive damages reflects that state's concern with protecting the financial interests of those doing business there and the state of residence's concern with avoiding excessive financial burdens on resident persons and corporations. *See Jackson, supra,* 459 F.Supp. at 956.

The fourth factor requires a determination of where the relationship, if any, of the parties is centered. Most of the actions filed in Illinois involve Illinois decedents who purchased their tickets in Illinois for a flight which began in Illinois. Although these factors indicate that the relationship between the parties is, to some degree, centered in Illinois, this is not significant for the purpose of this motion. Where the tickets were purchased or where the flight began is irrelevant to the question of the defendants' conduct.

Thus, we conclude that the most significant contacts for the purposes of this motion are the places where the conduct causing injury occurred and the states where defendants' principal places of business are located.

■ We turn first to the question of what state's law determines the availability of punitive damages as far as American is concerned. At the time of the crash, American's corporate headquarters and principal place of business was New York.[2] In August 1979, American moved from New York to Texas. New York clearly does not allow an award of punitive damages in wrongful death actions.[3] *Robert v. Ford Motor Co.*, 424 N.Y.S.2d 747 (1980); *Barrett v. State*, 85 Misc.2d 456, 378 N.Y.S.2d 946 (Ct.Claims 1976); *see also* N.Y. Estates, Powers & Trusts Law § 5–4.3 (McKinney 1967). Plaintiffs argue that Texas, American's present headquarters, is more significant for the purpose of the punitive damage issue because New York has no interest in shielding a former resident from excessive financial burdens.

In a similar case, *Miller v. Miller*, 22 N.Y.2d 12, 290 N.Y.S.2d 734 (1968), the New York court found that a defendant who moved from Maine to New York shortly after an automobile accident in Maine involving a New York resident, should be considered a New York resident for the purpose of determining the applicable law. In that action, however, the defendant had previously resided in New York for a substantial period of time prior to a short residence in Maine, and application of the Maine law would have limited the compensatory damages recoverable by the New York resident.

We conclude that policy considerations support finding New York, American's principal place of business at the time of the crash, determinative. A corporate move during lengthy litigation is not uncommon, but the move should not affect the substantive law to be applied in that litigation. Although in this action, American moved to a jurisdiction where the law arguably would increase its potential liability, the opposite situation might also occur. It would be clearly inequitable to allow a defendant to diminish the rights of the plaintiff through moving corporate headquarters, however legitimately, at some point after the injury occurred. We will, therefore, consider New York the relevant principal place of business for defendant American.

Where, as here, the law of the principal place of business conflicts with that of where the particular conduct (maintenance) occurred, we conclude that the former should prevail. Responsibility for corporate conduct in the form of punitive damages

---

2. At the time of the crash, American's center of operations was in Texas. Plaintiffs argue that courts have applied the "operations center" test to determine the principal place of business for carriers such as American. *Herschel, v. Eastern Airlines, Inc.*, 216 F.Supp. 347 (S.D. N.Y.1963); *Clothier v. United Airlines, Inc.*, 196 F.Supp. 435 (E.D.N.Y.1961). These cases, involving determination of diversity, are not applicable to the present situation. Further, as American indicates, this circuit applies the "nerve center" test to determine diversity issues. *Celanese Corp. of America v. Vandalia*

*Warehouse Corp.*, 424 F.2d 1176 (7th Cir. 1970). To the extent that this diversity test applies to a determination of the conflicts issues, therefore, it indicates that New York law should be applied.

3. Texas would allow punitive damage recovery by spouses or descendants in a wrongful death action. Tex.Const. Art. 16, § 26 (1975). *See also Scoggins v. Southwestern Elec. Service Co.*, 434 S.W.2d 376 (Tex.Civ.App.1968); *Pace v. McEwen*, 574 S.W.2d 792 (Tex.Civ.App. 1978).

should be uniform regardless of where the particular operation took place. American provides an excellent example of the confusion that a different rule would cause where, as is now common practice, a corporation chooses to locate different operations in various jurisdictions. American maintained its corporate headquarters in New York, its operations base in Texas, its maintenance department in Oklahoma, and conducts business throughout the country. Application of the law where the allegedly wrongful conduct occurred would require extensive examination of the particular employees and operations involved, as well as varying rules depending upon the particular type of conduct involved. It might also be necessary to determine the locations of the employees or corporate officers primarily or ultimately responsible for the conduct in question.[4] In the instant case, it might well involve maintenance performed in more than one state.

The most significant relationship test seeks to determine the applicable law in accordance with set principles in order to achieve certainty, predictability, and uniformity of result. Restatement, § 6. This result is best achieved by placing the responsibility for corporate conduct at the corporate headquarters where, as in the case of punitive damages, the purpose of the tort rule is to punish or deter wrongful conduct, or to regulate the financial burdens on resident persons or corporations. As previously stated, New York does not allow punitive damages in wrongful death actions. *See* page 8, *supra.*

■ We turn now to the question of what law applies to MDC. MDC maintains its principal place of business in Missouri, while the DC–10 aircraft was designed and built in California. The conduct of MDC in question involves alleged defective design and maintenance instructions regarding the DC–10 aircraft. For the reasons previously

stated, we will apply the law of MDC's principal place of business, Missouri, to the issue of punitive damages liability.

Missouri does not allow punitive damages *per se* in wrongful death actions. *Glick v. Ballentine Produce, Inc.*, 396 S.W.2d 609 (Mo.1965). It does, however, provide that the jury in a wrongful death action may be instructed to consider "mitigating or aggravating circumstances attending the death" where there has been a showing of "wilful misconduct, wantonness, recklessness or want of care indicative of indifference to consequences." Vernon Anno.Mo.Stat., § 532.090 (1975); *Wiseman v. Missouri Pacific R.R.*, 575 S.W.2d 742 (Mo.Ct.App.1979). The "aggravating circumstances" instruction, while authorizing damages punitive in character based on the defendant's conduct, is not considered punitive damages by Missouri courts. *Glick, supra*, 396 S.W.2d at 617. Inasmuch as this element of damage is governed by defendant's conduct, it is appropriately applied in the present actions.

Therefore, for action filed in Illinois, we will grant the motion to strike claims for punitive damages against defendant American, and deny the motion to strike claims for punitive damages against defendant MDC.

## ACTIONS FILED IN CALIFORNIA

■ Unlike Illinois, California does not use the "most significant relationship" test to determine the applicable law in tort cases. California courts first determine whether a true conflict exists by analyzing the interests of the states whose law might apply to the issue. *Reich v. Purcell*, 63 Cal.Rptr. 31, 432 P.2d 727, 730 (Sup.1967); *Hurtado v. Superior Court*, 114 Cal.Rptr. 106, 522 P.2d 666, 669–70 (Sup.1974). California courts recognize that there are three separate interests in wrongful death actions. First, the plaintiff's domicile may

---

4. The clear trend of decisions is to hold a corporation responsible for punitive damages only where corporate officers or "management" participated or acquiesced in unlawful conduct. *See Doralee Estates, Inc. v. Cities Service Oil Co.*, 569 F.2d 716 (1st Cir. 1977); *Jackson v.*

*Koninklijke Luchtvaart Maatschappij, N. V.*, 459 F.Supp. 953 (S.D.N.Y.1978); *Oakview New Lenox School v. Ford Motor Co.*, 61 Ill.App.3d 194, 378 N.E.2d 544, 19 Ill.Dec. 43 (3d Dist. 1978).

have an interest in the compensation of survivors. Second, the state of injury may be concerned with deterring wrongful conduct and protecting persons within its borders. Third, the defendant's domicile may have an interest in limiting residents' liability for damages thereby protecting residents from excessive financial burdens. *Hurtado, supra* at 672–3.

■ Where the law of the interested states conflicts as to a particular issue, the court is to determine the proper law by using the "comparative impairment" approach. *Bernhard v. Harrah's Club*, 16 Cal.3d 313, 128 Cal.Rptr. 215, 546 P.2d 719 (1976). Under this test, the court determines which state's policy, as reflected by its law, would be more severely affected if it were not applied. *Bernhard, supra* at 724.

■ As to defendant MDC, the two interested jurisdictions are 1) the place where the conduct occurred, California; and 2) the principal place of business of the defendant, Missouri.

The interest of California in this action is limited. California courts have traditionally held punitive damages not recoverable in wrongful death actions. *Tarasoff v. Regents of California*, 17 Cal.3d 425, 131 Cal. Rptr. 14, 551 P.2d 334 (1976); *Pease v. Beech Aircraft Corp.*, 38 Cal.App.3d 450, 113 Cal.Rptr. 416 (1976). Disallowance of punitive damages in wrongful death actions expresses a state policy to avoid excessive financial burdens on state residents. While MDC has substantial operations in California, as well as in Missouri, it is not a resident of that state. Accordingly, we conclude that California's interest is less than that of Missouri.

As for defendant American, the court must determine whether the laws of Oklahoma or New York should apply. Oklahoma allows punitive damages in wrongful death actions where the defendant acted with "oppression, fraud, or malice." 12 Okla.St.Ann. § 1053; 23 Okla.St.Ann. § 9. New York does not allow punitive damages. As we stated previously, where the law of

the principal place of business conflicts with the place where the particular conduct occurred, generally the former should prevail. Oklahoma's policy would not be severely impaired by application of New York law. Therefore, as to American, we conclude the law of New York applies to the issue of punitive damages. Accordingly, in the actions filed in California, the motion to strike claims for punitive damages will be denied as to defendant MDC and granted as to defendant American.

## ACTIONS FILED IN NEW YORK

■ New York courts apply the "governmental interest" approach in determining the applicable law in tort cases. *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1965); *Long v. Pan Am World Airways, Inc.*, 16 N.Y.2d 337, 266 N.Y.S.2d 513, 213 N.E.2d 796 (1965). This test requires the court to determine which state has the greatest concern with the specific issue raised because of its relationship or contact with the parties or the occurrence. *Babcock, supra*, 12 N.Y.2d at 481. Where there is nothing fortuitous in the fact that the injury occurred in a given state, New York courts will give great weight to the state where the injury occurred. *See Belisario v. Manhattan Motor Rental, Inc.*, 370 N.Y.S.2d 574, 48 A.D.2d 477 (1st Dept. 1975); *Walkes v. Walkes*, 465 F.Supp. 638 (S.D.N.Y.1979).

As New York courts have recognized, however, air crash disasters often present situations where the place of injury is largely fortuitous. *Kilberg v. Northeast Airlines, Inc.*, 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961); *Gore v. Northeast Airlines*, 373 F.2d 717 (2d Cir. 1967). That the injury in this case occurred in Illinois can certainly be considered "fortuitous." Under these circumstances, and considering the purpose of punitive damages, a New York court would hold that the law of the principal place of business determines the availability of punitive damages.

■ The reasons supporting application of the law of the principal place of business under California's interest analysis test sup-

port the same result under New York's governmental interest test. This is particularly appropriate for defendant American since its principal place of business is New York. As to defendant MDC, although New York does not allow punitive damages in wrongful death actions, New York, like California, has no interest in protecting a nonresident from financial burdens which would be imposed by the state of residence. Therefore, the law of New York applies to defendant American, and the law of Missouri to defendant MDC in actions filed in New York.

## ACTIONS FILED IN MICHIGAN

■ Michigan, like California, has abandoned the traditional *lex loci delicti* approach to conflicts questions in favor of the "interests analysis" approach. *Sweeney v. Sweeney*, 402 Mich. 234, 262 N.W.2d 625, 628 (1978); *Storie v. Southfield Leasing, Inc.*, 90 Mich.App. 612, 282 N.W.2d 417, 419 (1979); *Branyan v. Alpena Flying Service*, 65 Mich.App. 1, 236 N.W.2d 739, 742 (1976). Application of Missouri and New York law would not frustrate a well-established state policy of Michigan since Michigan has never found punitive damages proper in a wrongful death action. *Currie v. Fitting*, 375 Mich. 440, 134 N.W.2d 611 (1965).

■ For the reasons stated with regard to the California, Illinois, and New York actions, therefore, we will apply the law of Missouri as to MDC and New York as to American in actions filed in Michigan. Therefore, the motion to strike will be denied as to defendant MDC and granted as to defendant American.

## ACTIONS FILED IN PUERTO RICO AND HAWAII

■ Puerto Rico applies the traditional *lex loci delicti* test to tort actions. *Jimenez Puig v. Avis Rent–A–Car System*, 574 F.2d 37 (1st Cir. 1978); *DeVane v. United States*, 259 F.Supp. 18, 20 (D.P.R.1966). As stated earlier, the law of the place of injury in this case, Illinois, does not permit punitive damages in wrongful death actions. Denying punitive damages here does not frustrate the public policy of Puerto Rico, since Puerto Rico does not allow punitive damages in tort actions. *Ganapolsky v. Park Gardens Development Corp.*, 439 F.2d 844, 846 (1st Cir. 1971); *Cooperative de Seguros Multiples de Puerto Rico v. San Juan*, 289 F.Supp. 858, 859–60 (D.D.P.R.1968).

■ As for actions originally filed in Hawaii, neither plaintiffs nor defendants have discussed the conflicts rules of Hawaii and we have been unable to determine from our research how Hawaii would approach a conflicts question of this sort. Nevertheless, as to defendant American, under any of the conflicts rules previously discussed, interest analysis (California), governmental interest (New York), or most significant relationship (Illinois), the law of New York applies and punitive damages are not available. Under the traditional *lex loci delicti* test, Illinois law applies, and punitive damages also are not available. Therefore, all pending claims for punitive damages against defendant American will be stricken in actions filed in Hawaii.

■ As previously stated, under some conflicts rules, defendant MDC can be held responsible for punitive–type damages. Therefore, the motion to strike as to defendant MDC will be denied.

## CONSTITUTIONAL OBJECTIONS

Several plaintiffs argue that preclusion of punitive damages in wrongful death actions, where they are permitted in personal injury actions, is a violation of the equal protection clause of the federal and Illinois, Michigan, and California constitutions. In addition, some plaintiffs argue that this differentiation constitutes "special legislation" in violation of Art. 4, § 13 of the Illinois state constitution. Ill.Const. Art. 4, § 13 (1970). Defendants obviously take the opposite view.

■ We conclude that a denial of punitive damages in wrongful death actions does not violate the equal protection clause of the United States Constitution. *Huff v. White Motor Corp.*, 609 F.2d 286 (7th Cir.

1979); *Johnson v. International Harvester Corp.*, 487 F.Supp. 1176 (D.N.D.1980); *In Re Paris Air Crash Disaster*, 427 F.Supp. 701 (C.D.1977). Limitations on damages in wrongful death actions, where they are not limited to personal injury actions, have been held constitutional by the majority of courts to consider the question. *Cyr v. B. Offen & Co.*, 501 F.2d 1145 (1st Cir. 1974); *Mitseff v. Acme Steel Co.*, 208 F.Supp. 805 (N.D.Ill.1962); *Glick v. Ballentine Produce, Inc., supra, appeal dis'd* 385 U.S. 5 (1966); *Butler v. Chicago Transit Authority*, 38 Ill.2d 361, 231 N.E.2d 429 (1967).

Denial of punitive damages in wrongful death actions is not "so unrelated to the achievement of any combination of legislative purposes that . . . [the court] can only conclude that the legislature's actions were irrational." *Parham v. Hughes*, 441 U.S. 347, 352, 99 S.Ct. 1742, 1746, 60 L.Ed.2d 269 (1979). The state has a legitimate interest in the amount and distribution of damages to survivors of persons wrongfully killed. A state may determine that its interest in maintaining accurate and efficient disposition of property at death is best served by limiting damages in these actions to exclude punitive damages. *See Parham* at 357, 99 S.Ct. at 1748. Also, the state may believe that any punishment for wrongful conduct, beyond compensation for those injured or killed, is best handled through state of federal criminal processes.

For these reasons, we find that a denial of punitive damages in wrongful death actions does not violate the equal protection clause of the United States Constitution.

The constitutionality under state constitutions of denying punitive damages in wrongful death actions must be addressed since if it is unconstitutional, it might impact on the analysis of the conflicts rules of these jurisdictions.

■ The equal protection clauses of the Michigan and Illinois constitutions are coextensive with that of the federal constitution. *See Friedman & Rochester, Ltd. v. Walsh*, 67 Ill.2d 413, 10 Ill.Dec. 559, 367 N.E.2d 1325 (1977); *Commissioners of Highways of Town of Annawan v. U. S.*,

466 F.Supp. 745, 769 (N.D.Ill.1979); *Moore v. Spangler*, 401 Mich. 360, 258 N.W.2d 34 (1977). For the reasons stated with respect to the federal constitution, therefore, the unavailability of punitive damages in these actions does not violate the Illinois or Michigan constitutional protections.

■ The California equal protection clause, while fundamentally equivalent to that of the federal constitution, requires "some rationality" in the nature of the class singled out." *Brown v. Merlo*, 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212 (1973); *Serrano v. Priest*, 18 Cal.3d 728, 135 Cal.Rptr. 345, 557 P.2d 929 (1976). There obviously is a rational distinction between the damages of persons injured in accidents who survive and descendants or heirs of persons killed in accidents. There is no substantial difference between not allowing damages for pain and suffering or nature and extent of the injuries in death actions and not allowing punitive damages. The decisions of the courts and legislatures to preclude recovery of punitive damages in wrongful death actions fulfills this requirement. *See contra In Re Paris Air Crash, supra.*

Finally, the special legislation clause of the Illinois constitution must be considered. Art. 4, section 13 of the Illinois constitution provides: "The General Assembly shall pass no special or local law when a general law is or can be made applicable. . . ." Plaintiffs argue that the *judicial* construction of the wrongful death statute to preclude punitive damages is a special law violative of this provision since the common–law right to punitive damages can be made applicable to wrongful death actions.

■ This contention ignores the fact that other statutes in Illinois expressly providing that punitive damages may not be recovered have been upheld against challenges that they constitute "special legislation". *Smith v. Hill*, 12 Ill.2d 588, 147 N.E.2d 321 (1958) (upholding ban on punitive damages in breach of marriage promise actions); *Siegall v. Solomon*, 19 Ill.2d 145, 166 N.E.2d 5 (upholding ban on punitive damages in alienation of affections action).

Further, the "special legislation" prohibition only requires that the law operate alike in all places and upon all persons in like circumstances within the state. *Adams v. Continental Cas. Co.*, 21 Ill.App.3d 111, 314 N.E.2d 495 (1974); *Rincon v. License Appeal Commission of City of Chicago*, 62 Ill. App.3d 600, 19 Ill.Dec. 406, 378 N.E.2d 1281 (1978); *Friedman & Rochester, Ltd. v. Walsh, supra.*

## CONCLUSION

The inconsistency of finding punitive damages available against one defendant and not the other is compelled by differences in the various states' conflict of law and punitive damages rules and reflects the problems inherent in the application of state law to activities of national scope, such as those of the airline industry. Airlines and airplane manufacturers are subject to uniform federal regulation in almost every aspect of their operations, except their tort liability.

As recently as 1978, a bill was introduced in Congress to establish a federal cause of action for injuries suffered through aviation activity. *See* H.R. 10917, 124 Cong. Rec. No. 17 (February 14, 1978). If this bill, or any of its predecessors had passed, those actions would all be governed by federal law, uniform as to liability and damages, rather than by the varying laws of a number of states. *See* Note, 28 Vand.L.Rev. 621, 625 (1975). It is time that this important area of federal concern be addressed by the Congress to prevent substantial and incongruous variations in liability and damages determinations based on identical conduct solely because of differences in state conflicts of law principles and underlying tort law. It is clearly in the interests of passengers, the airlines, and the airplane manufacturers, as well as the state and federal governments, that this national activity be governed by uniform principles of federal law.

One final observation is appropriate. Notwithstanding all of the foregoing, it remains to be determined whether or not the evidence as to the conduct of MDC will warrant the submission of any issue of punitive damages to the jury. That question obviously cannot be answered until a trial on the issue of liability.

For the reasons stated, the motion of defendant McDonnell Douglas Corporation to strike all pending claims for punitive damages in the wrongful death actions before the court will be denied as to all actions, except those originally filed in Puerto Rico. The motion of defendant American Airlines to strike all pending claims for punitive damages in the wrongful death actions before the court will be granted as to all actions.

Because the availability of punitive damages against either defendant may control and effect the scope of discovery of this action, and in the opinion of the court, an immediate appeal from this order will materially advance the ultimate termination of this litigation, this matter will be certified pursuant to 28 U.S.C. § 1292(b) for immediate appeal.

An appropriate order will enter.