B. L. CARTAGE COMPANY *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF
CHICAGO *et al.*, Defendants-Appellees.

First District (1st Division) No. 58422

Opinion filed February 2, 1976.

Michael E. Dowd and Philip A. Lee, both of Chicago (Philip J. McGuire, of counsel), for appellants.

Richard L. Curry, Corporation Counsel, of Chicago (Daniel Pascale and Marsile J. Hughes, Assistant Corporation Counsel, of counsel), for appellees.

Mr. JUSTICE SIMON delivered the opinion of the court:

Plaintiffs are 19 common and contract carriers for hire who own or operate tank trucks used to transport bulk petroleum products from sellers to commercial consignees. They seek to have sections 100—1 and 100—7 of the Municipal Code of Chicago declared unconstitutional and void as applied to them and to enjoin the City of Chicago from enforcing these ordinances as to them.[1] The challenged ordinances are part of the regulatory scheme of the City of Chicago designed to pro-

---

[1] Sections 100—1 and 100—7 of the Municipal Code of Chicago provide:

"100—1. Every person using weights, measures, scale beams, patent balances, steelyards, or any instrument in weighing or measuring any article intended to be purchased or sold in the city, or any article weighed or measured for shipping or receiving purposes, or in weighing or measuring any person or animal for hire or reward, shall cause the same to be inspected and sealed by the inspector of weights and measures and shall obtain a certificate of accuracy in accordance with the provisions of section 16—4 of this code.

No person shall refuse to exhibit any weight, measure, scale beam, patent balance, steelyard, or other instrument to the inspector of weights and measures for the purpose of being so inspected and examined.

Any person violating any of the provisions of this section shall be fined not less than twenty-five dollars, nor more than one hundred dollars for each offense."

tect consumers against false weights and measures. The enforcement of the ordinances in question is the responsibility of the defendant Department of Consumer Sales, Weights and Measures of the City of Chicago (hereinafter "department"). The provisions under attack in this action require that certain deliveries of petroleum products be measured at the time and place of delivery by means of a meter or 5-gallon liquid measure or a vehicle tank, and that any type of measure used must be tested and sealed by the department.

The complaint attempts in a single count to state a variety of objections to the city ordinances. Its essential allegations are that plaintiffs do not operate their vehicle tanks for commercial purposes and consequently their regulation by the City is not authorized by State statute, that the ordinances do not cover the transportation activities of the plaintiffs, that the enforcement of the city ordinances results in harassment of the plaintiffs and unnecessary interference with their business, that the plaintiffs neither represent to consignees of fuel oil nor have any agreement with consignees that any specific volume will be delivered to them, that the enforcement of the city ordinances as to plaintiffs unduly burdens interstate commerce, that the ordinances constitute special legislation by not applying to petroleum products carried by rail, water or pipeline, and that the method employed by the City for testing accuracy is scientifically unsound, accomplishes no useful purpose, and forces the plaintiffs to perform useless acts. The circuit court granted a motion by defendants to strike and dismiss the complaint for failure to state a cause of action, and the plaintiffs appeal.

■■ The issue on this appeal is whether the complaint states a cause of action. We conclude it does not because in some instances plaintiffs' allegations are insufficient as a matter of law, in other instances they are not factually sufficient to support the claim plaintiffs intended to make, and in still other instances their allegations consist entirely of conclusions without allegations of fact necessary to support or explain the conclusions. In considering the defendant's motion to strike and dismiss the complaint, we observe the well-established rule that well-pleaded facts must be accepted as true but not conclusions of the pleader. (*City of Chicago v. Loitz* (1975), 61 Ill. 2d 92, 93, 329 N.E.2d 208; *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 554, 328 N.E.2d

---

"100—7. No person shall sell distillate fuels by any other than liquid measure using the standard gallon as the unit measure. No person shall sell or deliver or attempt to sell or deliver to any purchaser in excess of 10 gallons of any distillate fuel unless measured at the place and time of delivery by means of a meter or five-gallon liquid measure, tested and sealed by the department of weights and measures; provided that deliveries of distillate fuel in quantities of 2,000 gallons or more or of residual fuel of any quantity may be measured either through a meter or by a vehicle tank which has been tested and sealed by the department of weights and measures."

538.) A complaint need not contain evidentiary matter, formal and technical allegations or allege facts with precision, it should be liberally construed and it is not bad in substance if it reasonably informs the defendant of the nature of the claim he is called upon to meet. Nevertheless, it must contain sufficient factual allegations as distinguished from conclusions to demonstrate to the court and the defendant at the very least that the plaintiff is or may be harmed, the way in which the plaintiff has been harmed and that the harm results from some legal transgression or violation of a legal duty by the defendant.

The challenged ordinances are based on section 41 of the Illinois Weights and Measures Act (Ill. Rev. Stat. 1973, ch. 147, §141), which prohibits operation of vehicle tanks used for commercial purposes on Illinois highways unless they are equipped with a meter or other device for measuring deliveries from the tank or that have been calibrated for capacity.[2] Plaintiffs first argue that the Chicago ordinances do not apply to their operations because the State statute authorizes the City to adopt the ordinances in question only with respect to vehicle tanks "used for commercial purposes" and their trucks are not "used for commercial purposes."

■■ Plaintiffs refer this court to *Wisconsin Electric Power Co. v. United States* (1948), 336 U.S. 176, 93 L. Ed. 591, 69 S. Ct. 492; *United States v. Public Service* (10th cir. 1944), 143 F. 2d 79; and *State ex rel. Kansas City Power & Light Co. v. Smith* (1938), 342 Mo. 75, 111 S.W.2d 513, as authorities indicating the proper interpretation to be given to the requirement "used for commercial purposes" as those words are employed in the Illinois statute. Those three cases dealt with statutes taxing the sale of electricity to commercial users, and required decision as to whether a given use of electricity constituted a taxable commercial use as opposed to a non-taxed industrial use. The statute to be interpreted in this case is a regulatory statute rather than a revenue law, and the meaning given to the word "commercial" in the latter type of statute does not require an identical construction where regulation is the object.

---

[2] The statute provides:

"No person shall operate, upon the streets or highways of this State any vehicle tank *used for commercial purposes* unless such tank either is equipped with a meter or other device for measuring deliveries from the tank or has been calibrated for capacity and sealed by the director. When a vehicle tank has been calibrated for capacity by the director, he shall issue to the owner or. operator a certificate of calibration in which is shown the calibrated capacity of each compartment. * * * Enforcement of this Section is reserved to the director or to the sealer in a city having a population of 200,000 or greater according to the latest official United States census." (Emphasis supplied.)

■■■ The courts in the cases relied on by plaintiffs looked, however, to the intent of the legislature to determine the purpose of the statutes involved and then interpreted the term "commercial" in the statutes accordingly. Reconstructing this intent with respect to the statute authorizing the Chicago ordinances, the statute is a part of a scheme of regulation designed primarily to protect consumers in an area where they are otherwise ordinarily unable to protect themselves—fraud in the sale or delivery of distillate fuels. (*City of Chicago v. Kautz* (1924), 313 Ill. 196, 144 N.E. 805.) When the statute is read in conjunction with section 100—7 of the Municipal Code of Chicago, it is clear that plaintiffs' operations are within the area in which the statute is designed to afford protection. That the plaintiffs, as they allege, do not own or sell the fuel they deliver, do not use the tanks themselves as measuring devices, and make no representations and have no agreements concerning the quantities delivered does not protect a purchaser from receiving less than what he is paying for. The requirement of the statute for a meter or a calibrated tank truck is intended to further the protective policy by allowing a consumer to check for himself, at the time of delivery, whether the proper amount of fuel is being delivered.

■■■ Giving the statute the reading suggested by plaintiffs invites sellers of distillate fuels to avoid the statute by contracting with a carrier for delivery. It would also clear the way for those delivering fuel to defraud the consignees by delivering less than the amount paid for. Construing the statute to give effect to the intent of the legislature requires that "commercial purposes" as used in section 41 of the Illinois Weights and Measures Act include all deliveries made by vehicle tanks being operated for profit or as part of a business.

■■■ This result is in accord with the usual principles of statutory construction. Words used in a statute should be given their plain and ordinary meaning. (*Revzan v. Nudelman* (1938), 370 Ill. 180, 186, 18 N.E.2d 219.) "Commercial" is defined as "of, in or relating to or dealing with commerce * * * from the point of view of profit as the primary aim * * *." (Webster's Third New International Dictionary (Unabridged) (1971).) Plaintiffs are in the business of providing transportation services, and are compensated for the services they provide. The term "commercial" clearly includes the business of transporting and delivering distillate fuels from sellers to purchasers. The fact that plaintiffs are common and contract carriers for hire lends support to the conclusion we reach that their vehicle tanks are used for commercial purposes. The City of Chicago was, therefore, authorized by the Illinois Weights and Measures Act to make its ordinances applicable to the plaintiffs' vehicles.

■■ Plaintiffs' second contention is that enforcement of the municipal ordinances constitutes an unreasonable burden on the interstate transportation activities of the plaintiffs. This claim finds no support in the complaint other than the conclusory allegation that enforcement of the municipal ordinances is inconsistent with section 101 of the Interstate Commerce Act. (49 U.S.C. §1 *et seq.*)[3] The complaint in no way describes the interstate business of the plaintiffs or the manner in which they are engaged in interstate commerce. In fact, it does not even allege that plaintiffs' vehicle tanks carry distillate fuels across state lines or that plaintiffs engage in interstate commerce. The assertion with respect to the Interstate Commerce Act is not the equivalent of an allegation of fact stating the plaintiffs are engaged in interstate commerce, and, therefore, the complaint fails to allege how or that the application of the municipal ordinances to the plaintiffs can burden interstate commerce in any way.

■■ In their brief plaintiffs assert that they are exempt from the municipal ordinances because their situation is identical to that of the trucker in *City of Chicago v. Cuda* (1949), 403 Ill. 381, 86 N.E.2d 192, who was found to be exempt from the weights and measures regulations of the City of Chicago. In that case a Chicago consumer purchased coal from a dealer in Indiana. The consumer then employed a trucker to haul the coal from Indiana to his place of business in Chicago. The trucker failed to obtain the weight certificates required by Chicago's ordinance and was fined. The reviewing court concluded that the ordinance was not applicable where an owner hires a trucker to move his own goods from one place to another. Plaintiffs' complaint does not allege that plaintiffs are engaged in moving fuel from one place to another while at all times the fuel continues to be owned by their customers. The plaintiffs do describe such activity in their written response to defendants' motion to dismiss their complaint but their response was neither part of nor an amendment to the complaint. The trial court properly dismissed the complaint when it found in it no allegations setting forth circumstances such as existed in *Cuda*.

■ Even if the plaintiffs were engaged in interstate commerce, they are not exempt from nondiscriminatory police regulation when they discharge their loads in the City of Chicago. *General Baking Co. v. City*

---

[3] Section 101 provides in relevant part: "When * * * bulk freight is loaded by a shipper and the goods are described in a bill of lading * * * by a statement that the goods are said to be goods of a certain kind or quantity * * * such statements, if true, shall not make liable the carrier issuing the bill of lading, although the goods are not * * * of the kind or quantity * * * they were said to be by the consignor * * *."

*of Belleville* (1943), 384 Ill. 459, 51 N.E.2d 546, upheld a municipal ordinance imposing a license fee and requiring an inspection of trucks operating from Missouri and selling food stuffs in Belleville, Illinois. In *Huron Portland Cement Co. v. City of Detroit* (1960), 362 U.S. 440, 4 L. Ed. 2d 852, 80 S. Ct. 813, a Detroit police regulation of smoke emitted by a ship engaged primarily in interstate commerce was held not an undue burden upon interstate commerce. The Supreme Court noted:

> "The claim that the Detroit ordinance, quite apart from the effect of federal legislation, imposes as to the appellant's ships an undue burden on interstate commerce needs no extended discussion. State regulation, based on the police power, which does not discriminate against interstate commerce or operate to disrupt its required uniformity, may constitutionally stand." (362 U.S. 440, 448, 4 L. Ed. 2d 852, 859.)

So long as the ordinances do not distinguish between local, intrastate and interstate deliveries, and plaintiffs do not allege they do, they have no basis for claiming that interstate commerce is interfered with or burdened.

■■ Plaintiffs further attack the ordinances by alleging in their complaint that the enforcement of the ordinances by the defendants resulted in "harassment" of the plaintiffs and in "unnecessary interference" with the lawful conduct of their business. Plaintiffs, however, fail to allege any facts to indicate the nature or the illegality of the claimed "harassment" or of "unnecessary interference" with plaintiffs' business. The allegations of "harassment" and "unnecessary interference" are simply conclusions of the plaintiffs, not admitted by the defendants' motion to strike, and they are not sufficient to state a cause of action.

■■ Plaintiffs also contend that the municipal ordinances in question constitute special legislation because they do not apply to delivery of petroleum products by rail, water or pipeline. Section 41 of the Illinois Weights and Measures Act authorizes the City of Chicago to regulate only tank cars operated upon the streets and highways. The statute grants no authority to the City to regulate shipments of petroleum products carried by rail, water or pipeline. It follows that the city authorities acting pursuant to the powers granted to them cannot have enacted special legislation, nor have they denied equal protection to plaintiffs by not acting in areas in which the enabling legislation granted them no authority to act. Since the roads and streets of the City of Chicago are used by plaintiffs' vehicles in delivering distillate fuels, this was sufficient to justify the legislature to authorize the City to establish weights and measures regulations for vehicles using the City roads and streets. In addition, attacking the evil of false weights and standards in

delivery of distillate fuels by making the ordinance applicable to vehicles which used the City's roads and streets was a reasonable classification and a proper exercise of the police power. That the City did not cover false weights in distillate fuel delivered by ship, rail or pipeline does not destroy the remedial scheme it offered to correct an evil in the use of its streets. *McDonald v. Board of Election Commissioners* (1969), 394 U.S. 802, 809, 22 L. Ed. 2d 739, 745-46, 89 S. Ct. 1404.

■■ Finally, plaintiffs argue that the ordinance does not bear a reasonable relation to the consumer protection purpose it seeks to serve because the complaint alleges "the method employed by the [department] in testing for the certificate of the accuracy is scientifically unsound and accomplished no useful purpose * * *." The allegation of scientific unsoundness is a conclusion and, therefore, insufficient to state a cause of action. The complaint lacks allegations of fact demonstrating how and why the method employed to test for the certificate of accuracy is scientifically unsound and accomplishes no useful purpose. Had such facts been alleged the court could determine whether the method of testing does in fact fail to further the consumer-protection policy of the statute. On the basis of the complaint as it stands, the court can determine nothing except that plaintiffs claim the testing devices are useless.

In their brief on appeal, plaintiffs explain what they mean by "scientifically unsound." They assert that the method of calibration used consists of emptying 55-gallon drums of water into the tank and marking the level of given amounts on the tank. This method, the plaintiffs argue, is subject to inaccuracies caused by temperature variations in the outside temperatures and because petroleum products are loaded at high temperatures and cool while being transported. Plaintiffs also assert that the department does not have the facilities to calibrate all of their tank trucks, thus making it physically impossible for plaintiff to comply with the ordinance. The very fact that these explanations were necessary to give meaning to the complaint demonstrates that the allegations fell short of adequate pleading.

■■ It would have been improper for the circuit court to enjoin enforcement of the ordinances as to plaintiffs when the complaint lacked allegations sufficient to state a cause of action. (*Mister Softee of Illinois, Inc. v. City of Chicago* (1963), 42 Ill. App. 2d 414, 192 N.E.2d 424; *Larkin v. Howlett* (1974), 19 Ill. App. 3d 343, 311 N.E.2d 367.) The circuit court properly granted the motion to dismiss the complaint on the ground it failed to state a cause of action.

Judgment affirmed.

GOLDBERG, P. J., and BURKE, J., concur.