ARNOLD I. KRAMER, Plaintiff-Appellee, *v.* McDONALD'S SYSTEM, INC., *et al.*, Defendants-Appellants.—(BANK OF RIVER OAKS, Defendant.)

First District (5th Division)   No. 77-1138

Opinion filed June 9, 1978.

948

Foran, Wiss & Schultz, of Chicago (Richard G. Schultz, of counsel), for appellants.

Donald L. Bertelle and Collins & Amos, both of Chicago, for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Arnold I. Kramer (Kramer), brought an action against defendants, McDonald's System, Inc., McDonald's Corporation, and Franchise Realty Interstate Corporation (hereinafter referred to collectively as McDonald), and the Bank of River Oaks (Bank), alleging that McDonald and the Bank had acted in concert to convert certain restaurant equipment in which Kramer had a perfected security interest. Kramer sought damages for the alleged conversion, and a declaration of the rights of the parties as to the equipment, which was located in a McDonald's franchise restaurant. Following motions for summary judgment by both Kramer and McDonald, the circuit court of Cook County entered judgment against McDonald for $104,784.41, and McDonald appealed. The Bank is not involved in this appeal.

McDonald contends: (1) that the complaint does not state a cause of action and that Kramer has not alleged the elements of conversion; (2) that the trial court did not have jurisdiction; (3) that the granting of Kramer's motion for summary judgment was improper, and that summary judgment should have been entered in favor of McDonald; (4) that Kramer is not the proper party plaintiff to the action; (5) that it was error for the trial court to deny McDonald's requests for discovery; (6) that the trial court wrongfully refused to transfer the case to the law division; (7) that the rulings of the trial court violated McDonald's equal protection rights; and (8) that unrelated attorney's fees, interest and costs were improperly included in the judgment against McDonald and that McDonald's fees and costs should instead be awarded against Kramer. McDonald has also filed a motion with this court to enter an order imposing upon Kramer the costs of reproducing allegedly irrelevant excerpts from the record. The motion was taken with the case.

We affirm in part and reverse in part. The pertinent facts follow.

In July 1974, the Bank, located in River Oaks, Illinois, made a commitment to loan $107,000 to Ralph Baker (Baker), then a resident of Villa Park, Illinois. The loan was for the purpose of financing a McDonald's franchise restaurant in Midland, Texas. On November 30, 1974, Baker signed a note to the Bank for the $107,000 loan, securing the loan with a chattel mortgage which gave the Bank a security interest in the equipment and furnishings in the restaurant. The mortgage was recorded with the Secretary of State of Texas and the county clerk of Midland, Texas. In addition, on November 30, 1974, the Bank entered into a landlord subordination agreement with McDonald. The agreement

provided that, in the event of Baker's default on the note to the Bank, McDonald would consent to the removal of the property covered under the terms of the Bank's security agreement. It also provided that if Baker did not cure delinquencies in his payments after receiving notice from the Bank, the Bank would continue the note and security agreement upon receipt of notice from McDonald that it intended to keep the note current. Under the terms of the agreement, the option to maintain the note was "at the sole discretion" of McDonald and was not to be construed as a guarantee of payment by McDonald. McDonald further agreed that any interest which it had in the same equipment pursuant to its leasing agreement would be subordinated to the Bank's interest arising from the note until the loan was paid in full.

On December 9, 1974, McDonald and Baker entered into licensing and leasing agreements for the establishment of the franchise restaurant in Midland, Texas. The licensing agreement provided for Baker's operation of the Midland restaurant for 20 years, during which time Baker would comply with the policies of McDonald as set forth in the licensing agreement, pay licensing and service fees to McDonald, and make regular revenue and statistical reports to McDonald. McDonald, in return, would allow the use of its name and trademarks, provide training facilities for Baker's employees, and perform various consulting services to assist Baker in the operation of the restaurant. In addition, the licensing agreement contained the following relevant provision:

> "1.(b) * * * Licensee represents, warrants, and agrees that he actually owns the complete equity interest in this License and the profits from the operation of the Restaurant, and that he shall maintain such interest during the term of this License except only as otherwise permitted pursuant to the terms and conditions of this License. Licensee agrees to furnish Licensor with such evidence as Licensor may request, from time to time, for the purpose of assuring Licensor that Licensee's interest remains as represented herein."

The licensing agreement provided for assignment upon the death or permanent incapacity of Baker, the licensee, and for an assignment to a corporation whose shares are wholly owned and controlled by the licensee. Regarding any other assignments, the leasing agreement provided that the "Licensee shall not sell, transfer or assign this License to any person or persons without Licensor's prior written consent."

The licensing agreement also contained provisions regarding rights and duties upon the material breach of the license, which stated:

> "20. *Effect of Termination.*
>
> (a) In the event of any material breach of this License, Licensor shall have an immediate right to enter and take possession of the

Restaurant in order to maintain continuous operation of the Restaurant, to provide for orderly change of management and disposition of personal property, and to otherwise protect Licensor's interest.

(b) Upon termination of this License due to any breach or breaches, Licensee shall not, without prior written consent of Licensor, remove any furniture, fixtures, signs, equipment or other property or leasehold improvements from the premises either prior to or for a period of thirty days following such termination. Licensor shall have the option for thirty (30) days following any such termination to purchase Licensee's furniture, fixtures, signs, equipment, leasehold improvements and other property or any portion thereof for a sum equal to the fair market value of such property. In the event of such termination, there shall be no payment by Licensor for 'good will' or other intangible assets of Licensee."

Assignments or transfers of any interest in the license made in violation of the license agreement's provisions and failure to pay service fees due to McDonald were among the events listed as constituting a material breach.

The leasing agreement provided that Baker pay McDonald both a fixed amount and a percentage of the monthly gross sales as rent for the premises in which the restaurant was located. Under the terms of the lease, Baker agreed to purchase and install the signs, trade fixtures and equipment of the restaurant according to McDonald's specifications and also agreed not to encumber McDonald's title in the premises in any way. Baker was not allowed to "assign, convey, mortgage, pledge or encumber this lease or any interest hereunder or permit the use or occupancy of the premises or any part thereof by anyone other than the Lessee" without McDonald's prior written consent. McDonald retained the right of re-entry in case of Baker's default on the lease. The lease provided:

"Lessor shall have and Lessee hereby grants unto Lessor a lien upon all Lessee's property located on the demised premises, from time to time, for all rental and other sums due from time to time from Lessee to Lessor under the provisions of this lease."

In order to obtain additional financing of $90,000, Baker entered into a limited partnership agreement on January 17, 1975, forming the B/K Limited Partnership with Baker and his wife as general partners and Kramer and four others as limited partners. The certificate of limited partnership was signed and recorded with the Secretary of State of Illinois on January 23, 1975.

The purpose of the partnership, as stated in the partnership agreement, was:

"* * * to enter into a venture for financing the acquisition,

development and operation of a McDonald's Restaurant and License in Midland, Texas and such future McDonald's Restaurant and Licenses which may in the future become available to the General Partners with a right of first refusal to the Limited Partners hereunder to participate therein on the same basis as the participation herein."

The five limited partners agreed to contribute $90,000, to be placed in a bank in the metropolitan Chicago area, with Kramer designated as a co-signator for the purpose of drawing checks on the account. Partnership funds were to be deposited in one or more partnership bank accounts which the general partners were to establish either in the metropolitan Chicago area or in Midland, Texas. Baker and his wife, as general partners, were given "full authority, rights and powers upon such terms as they deem necessary, desirable or proper" to manage all of the affairs of the partnership.

The partnership agreement contained the following provision regarding the McDonald license and lease:

"The McDonald's License(s) and Lease(s) owned by the General Partner Ralph Baker, shall be held by said General Partner and said General Partner, Ralph Baker, shall own the entire legal, equitable and beneficial interest and power of direction * * * thereunder to said Licenses(s) [sic] and Lease(s). The General Partner, RALPH BAKER, acknowledges that he is the only signator to the McDonald's Agreement(s) and Lease(s) contemplated hereunder and pursuant to the terms of this agreement. The Limited Partners give the General Partners their Power-of-Attorney to act in their behalf with respect to dealings and directions to the Licensor and Lessor contemplated hereunder. The Limited Partners further acknowledge that they have no right to assert any recordable interest in the McDonald's License agreement(s) and Lease(s) which are the business of the partnership without the General Partners first obtaining the express written consent of Texas McDonald's System, Inc. and Franchise Realty Real Estate Corp."

In addition to designating Kramer as co-signator of checks drawn on the partnership accounts, the partnership agreement stated that: "All financial data supplied to McDonald's according to any License Agreement and Lease Agreement shall also be supplied to the Limited Partner, Arnold I. Kramer, who for purposes of the McDonald's Franchise shall be considered co-counsel * * *." The partnership agreement further contained a waiver of liability against Kramer which provided in pertinent part:

"The designated signatory, ARNOLD I. KRAMER, shall have no duties or responsibilities except as expressly provided herein and

shall not be obligated by or under any other agreement to which the designated signatory is not a party, even though reference thereto may be made herein."

Additionally, the agreement specifically provided that it shall be construed under Illinois law.

On January 17, 1975, Baker and his wife signed two notes, naming Kramer as payee of both. One note was an unsecured installment note with a principal sum of $90,000. The other was a note and security agreement for the amount of $175,823.80, which reflected a $90,000 principal and a finance charge of $85,823.80, and which showed payments due and interest accruing in amounts identical to those shown on the unsecured note. The security for the second note was in the form of a chattel mortgage, also bearing a date of January 17, 1975, and covering the following:

"Any license(s) granted by McDonald's System, Inc., any lease(s) with Franchise Realty Interstate Corporation, as Lessor. All inventory and accounts receivable of Debtor of every description together with the products and proceeds thereof, whether now or hereafter existing or acquired and all business equipment, machinery, fixtures and furniture of the Debtor of every description used or useful in the conduct of the Debtor's business, whether now or hereafter affixed thereto or used in connection therewith, whether located at 111 Andrews Highway, Midland, Texas, or elsewhere, including but not limited to the attached Schedule A."

The security agreement acknowledged the prior security interest of the Bank in the same property. Kramer's security interest was recorded with the Secretary of State of Texas on February 3, 1975, and with the recorder of deeds of Midland, Texas, on February 14, 1975.

Kramer and McDonald entered into a landlord subordination agreement on January 17, 1975, subordinating McDonald's rights under the lease to Kramer's rights under the note and security agreement, as McDonald had previously done with the Bank. The agreement with Kramer, however, acknowledged the existence of the Bank's prior lien on the property and stated that McDonald's option to maintain the note to Kramer on a current basis, in the event of Baker's default, was "unlikely to be exercised if the loan from the Bank of River Oaks is outstanding, or the extent it is still outstanding, upon default of Kramer's loan." Also on January 17, 1975, Kramer, Baker and McDonald executed a conditional assignment agreement which provided for all of Baker's "right, title and interest" in the lease and licensing agreements to be transferred to McDonald in the event of Baker's failure to cure any defaults under his security agreement with Kramer.

On January 22, 1975, the limited partners signed an agreement in which they appointed Kramer as their "nominee to appear a 'Lender' on all agreements with McDonald's System, Inc. and Franchise Realty Interstate Corporation and as payee in all notes executed by Ralph P. Baker and Janice Ann Baker." The limited partners also agreed to mutually indemnify each other against any losses, damages, costs and expenses arising either from compliance with the partnership agreement or from the authority of Kramer to act as their nominee. The limited partners further agreed to appoint Kramer as their "joint representative in any litigation or any demands to be made in their behalf pursuant to the terms of B/K Limited Partnership, notes tendered thereunder, and security given to protect their joint capital contribution." Also in the agreement was a provision that the limited partners agreed "to collect interest in their capital contribution only to the extent their capital contribution is not returned to them by payment of the Promissory Note given to guarantee the return of said capital contribution."

The restaurant opened in March 1975 and was operated by Baker and his wife until late in January 1976. The restaurant suffered substantial financial losses during that time. The operating statement of the restaurant as of December 31, 1975, reflected a loss of over $90,000. Baker defaulted on his loan from the Bank in October 1975.

In the early part of January 1976 Baker met with McDonald's representatives in Texas and offered to sell his interest in the lease and licensing agreements to McDonald so that Baker could pay off his creditors. McDonald obtained a payoff figure on the loan to the Bank and Baker contacted Kramer. An agreement was reached between Baker and McDonald as to the sale price and on January 22, 1976, Baker sent a telegram to McDonald, tendering the operation of the restaurant as of January 24, 1976, at 12:01 a.m. On the same day Baker sent a telegram to Kramer, stating that Kramer's "refusal, among other things, to reasonably negotiate the balance" of the promissory note forced Baker "to close the business for lack of funds." The telegram gave Kramer and the limited partners until January 23, 1976, at 11:59 p.m., to take over the business. McDonald delivered a letter to Baker on January 23, 1976, stating it would take over the restaurant as requested, sell it, and distribute the proceeds to Baker and his creditors.

Baker did not turn over the restaurant to McDonald, but ceased to operate the business. On January 26, 1976, McDonald notified Baker that he was in default under both the lease and licensing agreements, for failure to pay rental and service fees, failure to pay his debts when due, and abandoning the restaurant. Baker was given until January 28, 1976, at 5 p.m. to cure all defaults, or McDonald would "enforce all rights and remedies" under the agreements.

No action was taken by either Baker or Kramer, and McDonald took over possession of the restaurant. Upon receiving notice that McDonald had taken over the business, Kramer notified McDonald that Baker's note was in default and demanded payment of the February installment from McDonald. McDonald began negotiating with a new franchisee who took over operation of the restaurant, which still included the property which secured Kramer's note from Baker.

Baker sued McDonald in Federal district court in Texas, claiming that McDonald was guilty of fraud and misrepresentation in inducing him to operate the restaurant. McDonald counterclaimed against Baker and joined Baker's wife, the limited partners and the partnership's attorneys, alleging that they had conspired with Baker to defraud McDonald.

After being joined in the Texas proceedings, Kramer brought the instant action against McDonald in the circuit court of Cook County on April 12, 1976, claiming to be the owner of the property in the restaurant and seeking a declaration of his and McDonald's rights as to the property.

The Bank, having notified Baker on February 4, 1976, that he was in default on his note to them, published notice on May 13, 1976, in the Midland newspaper, that it would sell the property securing the note at a public auction to be held in Midland on May 20, 1976. Upon receiving his notice of the sale, Kramer amended his complaint on May 18, 1976, adding the Bank as a defendant, seeking a temporary restraining order to stop the sale, and asking for other relief. The court issued the temporary restraining order, which was vacated on May 19, 1976, upon motion of the Bank. The sale was held as scheduled and both Baker and Kramer were represented. Only the Bank bid on the property, and was recorded as the buyer in the report of disposition of collateral. On the following day, May 21, 1976, McDonald purchased the property from the Bank. The property remained in the restaurant and neither Baker nor Kramer exercised any rights of redemption.

Kramer filed a second amendment to his complaint on November 3, 1976, alleging that McDonald and the Bank had acted in concert to convert the property in which Kramer had a security interest, in that the sale was not held in a commercially reasonable manner, and that McDonald had exercised authority and control over property to which it had no right.

McDonald filed a motion to dismiss the action and Kramer filed a motion for summary judgment. The court granted Kramer's motion for summary judgment and McDonald filed a petition to vacate the summary judgment and a motion to reconsider its motion to dismiss. The court denied McDonald's motion to reconsider but vacated the summary judgment. Kramer withdrew his motion for summary judgment without prejudice and McDonald and the Bank were ordered to respond to

Kramer's complaint. In its answer, McDonald raised the affirmative defense that Kramer is a limited partner claiming to hold partnership property as collateral in violation of applicable statutes, and thus has no claim for conversion against McDonald. McDonald further claimed that the partnership was formed without its knowledge and was a violation of the lease and licensing agreements. McDonald then asked for dismissal of the case, reassignment to the law division and for the award of its attorney's fees and costs.

McDonald initiated discovery proceedings and Kramer filed a new motion for summary judgment. While the action on the motion for summary judgment was pending, both Kramer and McDonald continued with discovery proceedings, with the court quashing McDonald's notice of depositions on the limited partners, their attorney, and others involved in the partnership. McDonald again filed motions for transfer, dismissal and summary judgment, all of which were denied on May 5, 1977. On the same day, the trial court granted Kramer's motion for summary judgment and entered a judgment of $90,000 in his favor against McDonald. On May 31, 1977, the court granted Kramer's motion to correct the judgment amount to $104,784.41, after taking notice of a judgment that had been entered for Kramer in a separate action against Baker and his wife. McDonald has brought this appeal from the denial of its motions for summary judgment, dismissal of the complaint and its amendments, and transfer of the case, as well as from the judgment entered on behalf of Kramer on May 31, 1977.

OPINION

I.

■■ McDonald first contends that Kramer's complaint fails to state a cause of action and that none of the elements of conversion has been pleaded. The Civil Practice Act provides that "[n]o pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he is called upon to meet." (Ill. Rev. Stat. 1977, ch. 110, par. 42(2).) Moreover, the determination of whether or not a complaint states a cause of action requires that the pleadings be liberally construed. (Ill. Rev. Stat. 1977, ch. 110, par. 33(3); *Stribling v. Chicago Housing Authority* (1975), 34 Ill. App. 3d 551, 340 N.E.2d 47.) The essential test of the sufficiency of a complaint is whether it reasonably informs the defendant of a valid claim under a general class of cases of which the court has jurisdiction. (*B. L. Cartage Co. v. City of Chicago* (1976), 35 Ill. App. 3d 1055, 342 N.E.2d 733; *Matchett v. Rose* (1976), 36 Ill. App. 3d 638, 344 N.E.2d 770.) A sufficient complaint will allege facts which constitute the necessary elements of the

cause of action. *Dear v. Locke* (1970), 128 Ill. App. 2d 356, 262 N.E.2d 27.

■■ The instant case involves parties from Illinois, property in Texas, and actions of the parties in both Illinois and Texas, and it is therefore necessary first to determine whether Kramer's substantive rights, and thus the elements of the cause of action, are governed by Illinois or Texas law. Kramer's action centers on the claim that McDonald and the Bank exercised control over property, located in Texas, to which Kramer had an immediate possessory right. Because the property, the place of the alleged injury and the place of the conduct causing the injury are all located in Texas, that State has the most significant contacts with the dispute between the parties and Texas law will determine the elements of the cause of action which are necessary for Kramer to plead. *Ingersoll v. Klein* (1970), 46 Ill. 2d 42, 262 N.E.2d 593; *Jackson v. Miller-Davis Co.* (1976), 44 Ill. App. 3d 611, 358 N.E.2d 328.

Kramer has filed a complaint in three counts asking for a declaratory judgment regarding the rights of Kramer and McDonald in the restaurant equipment and fixtures, for a temporary restraining order to prevent the sale of the equipment, and for damages resulting from the alleged conversion of the property in question. Because the sufficiency of count I to state a claim for declaratory relief has not been challenged and the claim of count II has become moot due to the sale of the equipment which Kramer tried to prevent, it is not necessary to consider the sufficiency of those counts.

In count III, Kramer seeks recovery of damages for the alleged conversion of the restaurant equipment to which he claimed an immediate right to possession. Under Texas law, conversion is an unlawful exercise of ownership or control by one person over the property of another, evidenced by distinct actions of the alleged converter, to the exclusion of the rights of the owner. (*Pan American Petroleum Corp. v. Long* (5th Cir. 1964), 340 F.2d 211, *cert. denied sub nom. Southwestern Life Insurance Co. v. Pan American Petroleum Corp.* (1965), 381 U.S. 926, 14 L. Ed. 2d 684, 85 S. Ct. 1562.) To maintain an action for conversion, it is necessary to allege an immediate right of possession at the time of conversion (*Overseas Orders, Inc. v. Anaya* (Tex. Civ. App. 1971), 470 S.W.2d 72), as well as interference with the right to possession. (*Owens v. Grimes* (Tex. Civ. App. 1976), 539 S.W.2d 387.) Kramer has alleged a right to immediate possession by virtue of a perfected security interest in the restaurant property, the default of Baker, and McDonald's agreement to subordinate its rights to Kramer's. He also has alleged that a McDonald representative had given assurances to the Bank that the Bank would be protected from excessive loss and that

McDonald took over the business and possession of the property without authority. Kramer has further alleged a financial loss due to the sale of the restaurant equipment for $150,000 less than its fair market value. Thus, Kramer has pleaded the elements of conversion under Texas law and has met the Illinois procedural requirements that those pleadings be of facts sufficient to inform McDonald of the nature of Kramer's claim.

■■ McDonald's arguments regarding the inadequacies of the complaint are without merit. First, McDonald claims that there has been no wrongful conversion and that Kramer does not have a right to immediate possession of the property. Such arguments go to the merits of Kramer's claim and are not relevant to the determination of the sufficiency of Kramer's complaint, since for the purposes of testing the sufficiency of the complaint, all properly pleaded facts are to be taken as true. *Morse v. Nelson* (1977), 48 Ill. App. 3d 895, 363 N.E.2d 167.

McDonald further argues that, under Illinois law, a lienholder may not maintain an action for conversion. However, Kramer is a secured creditor, not a lienholder. The Uniform Commercial Code distinguishes between the two positions. (Ill. Rev. Stat. 1977, ch. 26, pars. 9—105(1)(m), 9—301(3); Tex. Code Bus. & Com. Ann. §§9.105(a)(9), 9.301(c) (1968).) Moreover, Texas law, which applies to Kramer's conversion action, will allow an action for conversion where, as here, a person with a partial interest in, or a lien on, property is deprived of that property, regardless of whether the alleged converter is the owner of another part of the same property, or a lienholder. (*Moore v. Carey Brothers Oil Co.* (Tex. Com. App. 1925), 269 S.W. 75.) The Texas courts have also found that an action for conversion will lie where a landlord, upon his tenant's failure to pay rent, takes over the tenant's business and turns the property over to a third person who then continues to operate the business in his own right. (*Lawson v. Townsend* (Tex. Civ. App. 1930), 25 S.W.2d 170.) Moreover, section 9—503 of the Uniform Commercial Code gives a secured creditor a right to immediate possession of the secured property upon the default of his debtor. This provision is in effect in both Illinois and Texas. (Ill. Rev. Stat. 1975, ch. 26, par. 9—503; Tex. Code Bus. & Com. Ann. §9.503 (1968).) Therefore, the allegations of an immediate possessory right, of McDonald's actions which interfered with the claimed right, and of Kramer's resulting damage, are sufficient to state a cause of action in conversion against McDonald.

## II.

McDonald next contends that the circuit court of Cook County was without jurisdiction of the subject matter for the reasons that the property in question is located in Texas and that the action constitutes a collateral attack on a judicial sale held under the Texas Commercial Code.

■■ McDonald maintains that the subject matter of the case is the property located in Texas and cites the case of *Oakman v. Small* (1918), 282 Ill. 360, in support of that proposition. In holding that in order to determine whether an inheritance tax is due on certain property, a court must have jurisdiction over either the beneficiary or the property, the court in *Oakman* stated that when the subject matter of litigation is specific property, jurisdiction may only be had where the property is situated. The court went on to state that a judgment cannot affect title to property located beyond the limits of the State, except insofar as to order one within the court's jurisdiction to do some act in relation to the property in accordance with the laws of the State where the property is located. (282 Ill. 360, 364.) Although these principles have long been recognized in Illinois, they do not support McDonald's position.

■■ The subject matter of the instant case is not the restaurant property located in Texas, but, rather, it is an action for the declaration of the rights of the parties with regard to that property as well as an action for the alleged conversion of that property by McDonald. Conversion is a transitory cause of action sounding in tort and may be brought in one State for a conversion of personal property located in another State. (89 C.J.S. *Trover & Conversion* §89 (1955).) Both the action for declaratory judgment and the action for conversion are justiciable matters and were thus within the trial court's subject matter jurisdiction. (Ill. Const. 1970, art. VI, §9.) The parties were properly before the court. The trial court, therefore, did have the power to hear this case.

■■ Nor is there any merit to McDonald's contention that the action for conversion is a collateral attack on a judicial sale under the Texas Commercial Code. While the sale is valid and enforceable and may be reduced to a judgment (Tex. Code Bus. & Com. Ann. §9.501(a) (1968).), it is not a sale made pursuant to a judicial proceeding. The sale of the restaurant property, rather than being a judicial sale, was one of the non-judicial remedies available under the Texas Commercial Code. (Tex. Code Bus. & Com. Ann. §9.504 (1968).) Moreover, Kramer is not seeking to void the sale, but seeks monetary damages which allegedly arose from the sale of the secured property. This right is specifically provided for in the Texas statutes. (Tex. Code Bus. & Com. Ann. §9.507 (1968).) We find, therefore, that this action does not constitute a collateral attack on a Texas judicial proceeding and that the trial court did have proper jurisdiction.

### III.

We turn now to McDonald's claim that the granting of Kramer's motion for summary judgment was improper, and that summary judgment should have been entered in favor of McDonald. Section 57 of the Civil Practice Act provides that summary judgment shall be rendered "if the

pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." (Ill. Rev. Stat. 1977, ch. 110, par. 57(3).) The purpose of summary judgment is to determine if any triable factual issues exist. (*Stanfield v. Medalist Industries, Inc.* (1975), 34 Ill. App. 3d 635, 340 N.E.2d 276.) If no material issue of fact exists, then the moving party is entitled to summary judgment, as a matter of law. *Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457; *Doran v. Pullman Standard Car Manufacturing Co.* (1977), 45 Ill. App. 3d 981, 360 N.E.2d 440.

In the instant case both McDonald and Kramer filed motions for summary judgment, based on different theories as to which law controls in this case. Kramer contends that his right to maintain this action is governed solely by the Uniform Commercial Code, while McDonald, on the other hand, contends that Kramer's rights are limited by the Uniform Limited Partnership Act (ULPA).[1] In order to determine whether or not the trial court properly granted summary judgment for Kramer, therefore, we must first determine whether the trial court properly applied the law.

There is no merit to Kramer's argument that the ULPA is not applicable because Kramer is suing as an individual and that McDonald has no standing to raise the ULPA in this proceeding. Kramer cites the case of *Mid States Vending Service, Inc. v. C.A.P., Inc.* (1977), 45 Ill. App. 3d 947, 360 N.E.2d 448, in support of its contention that the ULPA is immaterial and will not bar summary judgment in his favor. In that case, in upholding summary judgment granted to the holder of a promissory note, the court found that the defense that the debt arose out of an allegedly illegal contract between the plaintiff and defendant was immaterial to the question of summary judgment on the grounds that the promissory note in question was silent as to the existence of the alleged contract, and that the plaintiff needed no assistance from that contract in establishing its case. In the instant case Kramer is not bringing an action to foreclose a debt, but is instead bringing an action in conversion against McDonald. McDonald's affirmative defense of the ULPA's limitation of Kramer's rights as a creditor go directly to Kramer's ability to establish his right to immediate possession of the restaurant property and thus maintain his action against McDonald. The ULPA is clearly material to this case.

■■ The ULPA allows a limited partner to lend money to the partnership, but also limits the extent to which a limited partner may deal with the general partners and partnership. Section 13 of the Act defines those limitations as follows:

---

[1] Ill. Rev. Stat. 1975, ch. 106½, par. 44 *et seq.*

"(1) A limited partner also may loan money to and transact other business with the partnership, and, unless he is also a general partner, receive on account of resulting claims against the partnership, with general creditors, a pro rata share of the assets. No limited partner shall in respect to any such claim,

(a) Receive or hold as collateral security any partnership property, or

(b) Receive from a general partner or the partnership any payment, conveyance, or release from liability, if at the time the assets of the partnership are not sufficient to discharge partnership liabilities to persons not claiming as general or limited partners.

(2) The receiving of collateral security, or a payment, conveyance, or release in violation of the provisions of paragraph (1) is a fraud on the creditors of the partnership." (Ill. Rev. Stat. 1975, ch. 106½, par. 56.)

Kramer contends that, because McDonald is not a creditor of the partnership, it lacks standing to raise the ULPA as a defense. The cases cited by Kramer to support this contention concern either standing to sue or the ability to challenge a claim by voiding the underlying instrument. No such situations exist here. McDonald is not seeking to sue as a defrauded creditor. Nor is it attempting to void the note which Kramer holds. McDonald's defense is based on the contention that, as a limited partner, Kramer may not hold a secured interest in partnership property and thus does not have the immediate possessory right necessary to maintain his action for conversion. Section 43(4) of the Civil Practice Act recognizes "an instrument or transaction" which "cannot be recovered upon by reason of any statute" as an affirmative defense which "seeks to avoid the legal effect or defeat the cause of action set forth in the complaint." (Ill. Rev. Stat. 1977, ch. 110, par. 43(4).) McDonald clearly has standing to raise a statutory defense to defeat Kramer's claim against it. We conclude that the trial court improperly failed to apply the ULPA in deciding the motions for summary judgment.

As a limited partner, Kramer's right to bring this action ultimately depends upon whether or not the note was secured by partnership property. Section 8 of the Uniform Partnership Act provides in pertinent part:

"(1) All property originally brought into the partnership stock or subsequently acquired, by purchase or otherwise, on account of the partnership is partnership property.

(2) Unless the contrary intention appears, property acquired with partnership funds is partnership property. * * *." Ill. Rev. Stat. 1975, ch. 106½, pars. 8(1) and (2).

The chattel mortgage for the note covered any leases or licenses with

McDonald, the inventory, accounts receivable, and "all business equipment, machinery, fixtures and furniture * * * used or useful in the conduct of Debtor's [Baker's] business" in Midland, Texas. The partnership's stated purpose was "for financing the acquisition, development and operation" of the restaurant. The property which secured the note was clearly partnership property. It was purchased by Baker for the establishment of the restaurant, from proceeds of the loan from the Bank, which had a prior security interest in the equipment and furniture. It was obviously acquired "on account of the partnership," for use in the business of the partnership.

The conclusion that the note is secured by partnership property is supported by the partnership agreement, which excludes the depreciation of the "building, improvements, furniture, fixtures, furnishings, and equipment" from the net profits of the business. The partnership also considered the Bank's "loan principal amortization paid by the Partnership" and any "amounts expended by the Partnership for capital expenditures or deferred expenses" as deductions from the net profits of the partnership. Moreover, the record includes cancelled checks, signed by Baker and Kramer, which paid the Bank and other creditors from the partnership bank account. Depreciation of the property securing the note was also claimed on the partnership's tax returns. The intent of the partners to consider the property as partnership property is evident, and Kramer cannot now claim that it is not partnership property in order to maintain this action against McDonald.

We note also that there is further documentation of record that shows that Kramer was acting on behalf of the limited partners in the original loan transaction and in this suit. The partners refer specifically to the "Promissory Note given to guarantee the return of said capital contribution" in their mutual indemnification agreement in which Kramer was designated to appear as payee on all notes executed by the Bakers. The partnership's attorney, in a letter to Baker, again referred to the note, and advised Baker, as well as the other partners, "not to discuss their arrangements in this transaction."

Although Kramer claims as the named payee of the note and argues the partnership is thus irrelevant, this does not alter our conclusion that Kramer cannot bring this action. Kramer as a limited partner may not hold a security interest in partnership property. The note is secured by partnership property. While the note itself is enforceable, the security interest is not, and Kramer does not have the rights of a secured creditor under the Uniform Commercial Code.

■■ We find, therefore, that the trial court erred in entering summary judgment for Kramer, because it failed to apply the ULPA. We find also

that there are no issues of material fact to be resolved. Because Kramer cannot hold a security interest in the property in question, he does not have a right to immediate possession under the Uniform Commercial Code. Thus, one of the necessary elements of Kramer's cause of action for conversion is lacking, and summary judgment should have been entered instead in favor of McDonald.

## IV.

McDonald next contends that Kramer is not the proper party plaintiff to this action in that Kramer has failed to join necessary parties as plaintiffs and has not met the requirements of section 22 of the Civil Practice Act.

■■ McDonald maintains that, because all five limited partners contributed capital to the partnership, all five must be joined as necessary parties plaintiff. While any order entered without the court having personal jurisdiction over indispensable parties is null and void (*Glickauf v. Moss* (1974), 23 Ill. App. 3d 679, 320 N.E.2d 132), the limited partners other than Kramer are not indispensable to the instant action. Kramer is suing as the named payee of a note secured by a recorded chattel mortgage. Under the Uniform Commercial Code, in effect in both Illinois and Texas, a secured party is defined as a "lender, seller or other person in whose favor there is a security interest * * *." (Ill. Rev. Stat. 1975, ch. 26, par. 9—105(1)(m); Tex. Code Bus. & Com. Ann. §9.105(a)(9) (1968).) Although the limited partners may be "lenders," none other than Kramer could be a secured party, because only Kramer's name appears on the notes, security agreement and filings. Kramer is exercising rights which are specifically reserved for a "secured party" upon the default of a debtor. (Ill. Rev. Stat. 1975, ch. 26, par. 9—501; Tex. Code Bus. & Com. Ann. §9.501 (1968).) While the limited partners have an interest in the eventual outcome of the case, they are not parties to the note and agreement which are the bases for Kramer's standing in this action. The other limited partners are therefore not indispensable to the proper adjudication of the instant case.

■■ Section 22 of the Civil Practice Act provides in pertinent part:

"(1) The assignee and owner of a non-negotiable chose in action may sue thereon in his own name. He shall in his pleading on oath allege that he is the actual bona fide owner thereof, and set forth how and when he acquired title." (Ill. Rev. Stat. 1977, ch. 110, par. 22.)

Section 22 applies to an "assignee and owner." While Kramer is the owner of the notes and security agreement, he is not an assignee. He is the named payee and, as such, need not make specific allegations as to his ownership, his right to ownership being clearly stated on the face of the notes and agreement.

## V.

Inasmuch as we conclude that summary judgment was improperly granted in favor of Kramer and should instead be entered in favor of McDonald, it is unnecessary to reach McDonald's contentions that it was error to refuse additional discovery and to reassign the case to the law calendar, and also that unrelated attorney's fees, interest and costs were improperly included in the judgment in favor of Kramer.

## VI.

McDonald also contends that Kramer is liable for all attorney's fees, expenses and costs incurred by McDonald in the course of this action and requests remandment with directions to determine and enter judgment accordingly.

McDonald maintains that the partnership purchased an interest in the franchise for $90,000, and as beneficiaries under the agreements, assumed the obligations of the lease and license. The lease and license included provisions whereby Baker agreed to hold McDonald harmless from "attorney's fees, court costs and other expenses of litigation" if McDonald is subjected "to any claim, demand or penalty" or becomes "a party to any suit * * * by reason of any claimed act or omission" by Baker. McDonald argues that it has been made a party to this action and because of Baker's failure to pay the $90,000 due on the note, that Kramer, as a limited partner and designated co-counsel for the partnership, is therefore liable for this obligation arising under the lease and licensing agreements. McDonald claims that Kramer is liable either as an assignee of Baker or as a party to the partnership. We disagree.

■■ First, the partnership does not constitute an assignment of Baker's rights under the lease and licensing agreements. To be an assignment, there must be an intent to effectuate one, and that intent may be reflected by any instruments executed by the parties, as well as from surrounding circumstances. (*Rivan Die Mold Corp. v. Stewart Warner Corp.* (1975), 26 Ill. App. 3d 637, 325 N.E.2d 357; *Buck v. Illinois National Bank & Trust Co.* (1967), 79 Ill. App. 2d 101, 223 N.E.2d 167.) No such intent is evident in the partnership agreement. The agreement defines the purpose of the partnership as being the acquisition and operation of the franchise restaurant and license in Texas. The interests of both the general and limited partners are specified percentages in the "net profits of the Partnership, and net proceeds resulting from the sale, mortgage, refinancing, and condemnation of any property held by the Partnership." All partners agreed to share any losses according to the percentage of their interests in the partnership. Baker himself was to retain 12½ percent of all profits and losses. The partners further agreed that Baker owned "the entire legal, equitable and beneficial interest and power of direction" of the license and lease agreements and that the limited partners had "no

right to assert any recordable interest" in the license or lease agreements without the "express written consent" of McDonald. Clearly, the partnership agreement reflects no intent on Baker's part to transfer his rights to the limited partners so that they would stand in the same relationship to McDonald as did Baker.

■■■ Second, Kramer is not liable for McDonald's expenses merely because he is a member of the partnership. Under the Uniform Partnership Act, every partner is an agent of the partnership. (Ill. Rev. Stat. 1975, ch. 106½, par. 9(1).) All partners are jointly and severally liable for any loss or injury to nonpartners caused by a wrongful act or omission by any partner acting within the scope of the partnership and for misapplication of property of third persons, and are jointly liable for all other debts and obligations of the partnership. (Ill. Rev. Stat. 1975, ch. 106½, par. 15.) However, the Uniform Partnership Act applies to limited partners only to the extent that it is not inconsistent with the Uniform Limited Partnership Act (Ill. Rev. Stat. 1975, ch. 106½, par. 6(2).) and the latter specifically limits the liabilities of limited partners. It states:

"A limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business." Ill. Rev. Stat. 1975, ch. 106½, par. 50.

There is no evidence that Kramer took any part in the control of the franchise restaurant. The limited partners conveyed their powers of attorney to the general partners, Baker and his wife, with respect to any dealings with McDonald. The agreement specifically provided that Baker and his wife had "full authority, rights and powers upon such terms as they deem necessary, desirable or proper to manage the affairs of the Partnership in all matters and in any manner allowed by law." Although Kramer was designated a co-signator of checks along with Baker, this did not constitute control over the business. Kramer could not sign checks without Baker's knowledge and Kramer had no other authority in the operation of the business. Nor does Kramer's designation as co-counsel "for purposes of the McDonald's franchise" constitute his taking part in the control of the business. Kramer's duties under the limited partnership agreement were solely to represent the interests of the limited partners, and although Kramer was to receive certain information of Baker's dealings with McDonald, the information was within the rights of limited partners specified in the ULPA (Ill. Rev. Stat. 1975, ch. 106½, par. 53) and did not amount to control of the business.

## VII.

Finally, McDonald has filed a motion under Supreme Court Rule 342 (Ill. Rev. Stat. 1977, ch. 110A, par. 342) to impose costs against Kramer for the reproduction of certain excerpts from the record, which allegedly are

nonessential and unnecessary to this appeal. In light of our disposition of this case, however, we need not determine whether or not Kramer properly designated the excerpts. Rule 342(h) provides in pertinent part that:

> "The actual and reasonable cost of producing the excerpts from record or the abstract or additional abstract, proved by affidavit satisfactory to the clerk of the reviewing court, shall be taxed as costs in the case." (Ill. Rev. Stat. 1977, ch. 110A, par. 342(h).)

McDonald may thus include the costs of reproducing the questioned excerpts with its claim for other costs of the appeal. We, therefore, do not here further consider the motion.

## VIII.

For the foregoing reasons, the denial of McDonald's motion to dismiss the complaint is affirmed; the order granting summary judgment for Kramer is reversed; and the denial of McDonald's motion for summary judgment is reversed and summary judgment is here rendered in favor of McDonald and against Kramer. Remandment is denied. The motion taken with the appeal is not considered.

Denial of dismissal affirmed; Kramer's summary judgment reversed; McDonald's summary judgment denial reversed and entered. Remandment denied; taken motion not considered.

SULLIVAN, P. J., and LORENZ, J., concur.